ILLINOIS CENTRAL RAILROAD CO. *v.* R. E. LEBLANC.

1. CIRCUIT COURT. *Jurisdiction. Ejectment. Constitution* 1890, § 160.

   The circuit court has jurisdiction generally of an action of eject-
   ment, and is not deprived thereof by § 160 of the constitution of
   1890.

2. SAME. *Constitution* 1890, § 147.

   The circuit court having entertained jurisdiction of this case—an
   action of ejectment—wherein plaintiff's title was proved by a tax
   deed and a decree of the chancery court confirming the same, this
   court is precluded, by § 147 of the constitution 1890, from reversing
   for want of jurisdiction, even if, by § 160 of the constitution, the
   remedy in the particular case should have been sought in the chan-
   cery court.

3. TAX DEED. *Decree confirming. Ambiguity. Code* 1892, § 3776.

   Under § 3776, code 1892, in an action of ejectment on a tax collector's
   deed and a decree confirming the same, wherein the land is de-
   scribed as "fractional thirty-eight acres" in a certain forty-acre
   tract assessed to a certain party, it is admissible to offer in evi-
   dence the assessment rolls, tax receipts and deeds which identify
   the remaining two acres, on which the taxes were paid, and
   thereby identify the land sold for taxes, and the description in the
   decree of confirmation may be thus aided as well as the tax deed.

4. SAME. *Railroad right of way. Superstructure.*

   A decree confirming a tax title to land, made under the general law
   of taxation, and not under the special provisions of the code of
   1880 for the taxation of railroads, over which a railroad company's
   right of way extends, and which decree removes all clouds from
   the title of the owner of the tax deed and adjudges it a perfect
   title and cancels all interest, claim or privilege of the railroad
   company to the land, carries the easement or right of way, even
   if the tax title thereto was invalid, but it does not carry the rail-
   road company's track and superstructure.

5. RAILROAD. *Ejectment for right of way.*

   While ejectment can be maintained against a railroad company for
   the possession of its right of way, yet execution of such a judg-

ment should be stayed for a reasonable time, to enable the company to institute and prosecute a condemnation proceeding to acquire a right to the way.

6. LAND. *Eminent domain. Improvements. Public purposes.*

The general rule that things affixed to the freehold by trespassers belong to the owner of the soil, is not applicable as against a body having the right of eminent domain and who has wrongfully entered and made improvements for the public purposes for which it was created and given the right.

FROM the circuit court of Pike county.

HON. W. P. CASSEDY, Judge.

In 1886 the Illinois Central Railroad Company, the lessee, and the Chicago, St. Louis & New Orleans Railroad Company, the lessor, jointly condemned about sixteen acres of land in section 11, adjacent to their main track near Chattawa, Pike county, and acquired the same in an eminent domain proceeding, from which to obtain gravel for the purpose of ballasting the road-bed, and established gravel pits thereon. The land, and that in section 14, just south of it, was assessed by legal subdivisions, including the right of way in both sections, on the general assessment roll of the county for the taxes of the year 1890, and, notwithstanding the railroad companies paid their taxes for said year under the laws then in force for the taxation of railroads, the lands, while so assessed, in both sections were sold by the tax collector in March, 1891, for the taxes of 1890, and they were purchased at said sale by L. C. and M. Lenoir, to whom a regular tax collector's deed was executed. After the lapse of one year from the tax sale, the grantees in the tax deed sold to LeBlanc, who at once proceeded to drive the railroad employes from the gravel land. The railroad companies then enjoined LeBlanc from interfering with the laborers in the gravel pits and from preventing the appellants' use of the gravel. The bill sought to redeem the lands from the tax sale, upon the idea that sec. 79, constitution of 1890, gave two years for redemption, and, independently of the re-

demption, to cancel the tax deed to the gravel lands.    LeBlanc made his answer in the suit a cross bill, and sought to confirm his tax title to the gravel lands and to the lands in section 14 as well.

The chancery court of Pike county, by its decree, canceled LeBlanc's tax title to the gravel lands, and to the railroad right of way over section 11 and section 14, but confirmed it as to the other lands in his deed.    LeBlanc appealed therefrom to the supreme court, and the case is reported, 72 Miss., 669.    ·The supreme court affirmed the decree of the chancery court so far as it related to the right of way in section 11, and confirmed LeBlanc's tax title as to all other lands embraced in it.    The confirmation, however, of the tax title to the right of way in section 14 was caused, as was contended, by an error in entering the supreme court judgment, court and counsel overlooking the fact that a part of the railroad right of way was located on section 14. This error being discovered, a motion was made in the supreme court, after the adjournment of the term, to correct the decree, which motion was overruled.    The motion is reported, 73 Miss., 463, and to the case as previously reported, on the appeal and on the motion, reference is made, as well as to the opinion herein, for additional facts involved in the present case.

*R. H. Thompson*, for appellant.

Has the circuit court jurisdiction of ejectment suits?    It is recognized that sec. 147, constitution, would prevent a reversal if there be no other error in the record, but I so confidently believe other errors will be found that I proceed to say: All jurisdiction is expressly provided for by our constitution.    The jurisdiction conferred on our courts by the constitution not only embraces all subjects, but that conferred on each is exclusive, except where concurrent jurisdiction is expressly provided for in the instrument itself.    The circuit court is not given any specific grant of jurisdiction.    It is a residuary legatee, so to speak; it only has such jurisdiction as is not vested in some other court.    The language of sec. 156, constitution, is the

equivalent of saying the circuit court shall not have jurisdiction
of matters vested in other courts. By no sort of reasoning
can a circuit court be held to have jurisdiction of (*a*) matters in
equity, or (*b*) divorce and alimony, and the legislature is with-
out power to confer it. If the chancery court's jurisdiction of
the subject-matters mentioned in paragraphs (*a*) and (*b*) of
sec. 159, constitution, is exclusive, it is certainly so of the
subject-matters of paragraphs (*c*), (*d*), (*e*) and (*f*) thereof. If
this is true, why is it not true of the jurisdiction conferred on
the chancery court by sec. 160, constitution? By that section
the chancery court, in suits to try titles, etc., is given jurisdic-
tion "to decree possession, and to displace possession and to
decree rents," etc. It must be noted that by paragraph (*f*),
sec. 159, the chancery court has exclusive jurisdiction of "suits
to try titles," etc. That the jurisdiction of our courts generally
is exclusive, is shown most conclusively by the fact that the
constitution provides for concurrent jurisdiction, itself creating
the only exceptions to the general rule, sec. 161. Where a
general rule is announced by, or is deducible from, a constitu-
tional or statutory enactment, and the same law specifies the
exceptions thereto, it is almost conclusive that cases not found
in the express exceptions are within the general rule. The
notes under § 500, code 1892, show the extent to which this
court has gone in the matter of equity jurisdiction in land suits;
and all this is now made constitutional jurisdiction by para-
graph (*f*), sec. 159, constitution. The mind cannot conceive
of an ejectment suit the facts of which would not justify, if it
be a case of merit, a suit in equity, or the facts of which could
not be rightfully brought before a chancery court and full and
complete relief be there given. If this be true, such contro-
versies can only be rightfully brought in the chancery court.
This court has decided that the jurisdiction of justices of the
peace in actions of tort is constitutional rather than statutory.
*Illinois, etc., R. R. Co.* v. *Brookhaven Machine Co.*, 71 Miss.,
663. The logic of this decision is that justices of the peace have

jurisdiction of ejectments for lands worth less than $200, if the jurisdiction thereof is at law; the only escape is to place ejectments in the chancery court.

The next question is, had the circuit court jurisdiction of the particular controversy? The point here made is that the chancery court had first obtained jurisdiction. If one court correctly obtains jurisdiction of a suit, its right to hear and determine the cause is exclusive of all other courts. Sec. 147, constitution, does not affect this rule.

Certainly, in this case, the chancery court of Pike county first obtained jurisdiction of Mr. LeBlanc's cause; it did try appellee's title, and it did—or this court on appeal therefrom did, which is the same thing—adjudge his title to be good; it canceled appellant's title to the land now in controversy. If the constitution means anything, it means, to use its own words (sec. 160), that the chancery court "shall have jurisdiction in such cases to decree possession and to displace possession," etc. If an express jurisdiction conferred by the constitution on the chancery court is exclusively in that court, then the right to hear and determine Mr. LeBlanc's cause was, and is, in the chancery court only, and not in the circuit court. It looks to the writer that this ought to be the end of this controversy. It cannot be possible that the chancery court, which is affirmatively given jurisdiction to decree possession and to displace possession by the fundamental law, is without power to enforce its own decrees.

Suppose for the moment that the circuit court has jurisdiction ordinarily of ejectment suits, and suppose a plaintiff had recovered a judgment in such an action, but had failed to obtain an order for the issuance of a writ of *habere facias possessionem*, would the chancery court entertain a bill simply to award him possession of the land? Certainly not. And yet the case before us is the exact case, the courts being reversed, of the one supposed. Each court is equally powerful to enforce its own judgments or decrees.

Our statute, § 1626, code 1892, has no application; that re-

lates to causes of which no court has as yet obtained jurisdiction, and it does not repeal the rule that a court having obtained jurisdiction of a cause has the same to the exclusion of other courts.

The next question is one which must be considered on principle rather than upon Mississippi authority. There are to be found in our reports several cases of ejectment which have been maintained against railroads; but it will be found that only one of them gave room for consideration to the question now presented (*Beck* v. *L., N. O. & T. R. Co.*, 65 Miss., 172), and it is respectfully submitted that due consideration was not given in that case to the public interests involved—in fact, the rights of the public were not mentioned by the court, if they were considered at all.

The other cases are, naming them in the reverse order of their decision, *L., N. O. & T. R. R. Co.* v. *Blythe*, 69 Miss., 939, where the court below maintained the action, but it was reversed by this court; *V. & M. R. R. Co.* v. *Lewis*, 68 Miss., 29, which did not involve a right of way but outlying lands; *V. & M. R. R. Co.* v. *Lewis*, 67 Miss., 82, where the contention was only about that part of the lands off from the right of way. *Madden* v. *L., N. O. & T. R. R. Co.*, 66 Miss., 258, does not appear to have involved a right of way for the main line of the road. The case of *L., N. O. & T. R. R. Co.* v. *Day*, 67 Miss., 227, was not, as erroneously said in *Day* v. *L., N. O. & T. R. R. Co.*, 69 Miss., 590, an action of ejectment. Remember that the question is, can the railroad company—the Illinois Central Railroad Company, a going public railroad—be ejected from its right of way and main track, a half mile of it? Certainly the courts ought not to do a vain thing. Should the appellant be ejected from its right of way and main track, it would have, or should have at any rate, the right at once to re-enter, and, by proper condemnation proceedings, to regain possession. Under such condition of rights, a *habere facias possessionem* should not issue, even if it be held that the title might be tried in ejectment; and the judgment appealed from is erroneous in awarding such a writ.

The point I make in this cause, and which does not seem to have received due consideration, if any consideration at all, in previous cases in this court, is this: The rights of the public have intervened, and should have prevented the plaintiff from recovering in this cause, which recovery, if affirmed, will destroy the appellant's line of railroad by wresting possession of a part of it from the company. I do not ask the court to predicate this defense on the rights of the appellant so much as upon considerations of public policy. The rights of the citizen should be, and are often, narrowed, in order that the public welfare may be advanced.

One of the most important of legal maxims is to the effect "that regard shall be had to the public welfare is the highest law." Certainly this highest law is broad enough to prevent a private person from dispossessing a solvent railroad company of a part of its main line, when the company is charged with a service public in its nature and important to the social and commercial interest of the country. Mr. LeBlanc ought not, if his title be perfect both legal and equitable, to be denied full and complete compensation, but the public interest requires that he should be denied possession of the railroad track. Vast interests are involved in the maintenance of railroads. They are charged with a public service, and a public character is so strongly impressed upon them that courts exercise a control over them much beyond that assumed over private individuals. They are recognized as instruments of interstate commerce, and, as such, are within the control of the federal congress. They may exercise rights under the power of eminent domain because of their public character. Towns and cities spring into existence along their lines. Factories, elevators and warehouses are built upon them. The mails of the nation are carried by them. They are common carriers of freight and passengers. All of these interests and more combine in demanding that a citizen, after the possession of the road has involved public interest, shall not be allowed to sever the line and de-

stroy its efficiency by wresting possession of a part of it from the company. The case does not stand upon the ordinary doctrine of estoppel. The great principle of public policy enters as an important factor, and should control the judgment of the court. Nor is there any hardship upon the landowner in yielding to its dominion. Ample remedies are open to him. He may demand and secure full compensation. If the principle contended for causes suffering, it is better for Mr. LeBlanc to suffer than for the whole public to suffer. But he need not suffer, for compensation full and adequate will always be awarded him by the courts, although possession be denied.

Property in a railroad is peculiar. It has, with propriety, been likened to a chain, which is worthless with one link out. The ejectment of the company from one-half mile of its main track, as done by the judgment appealed from, would largely destroy the value of the entire line not only to the company, but to the state and to the public. Every consideration of public policy requires that Mr. LeBlanc should not be permitted to destroy the vast interest involved by excluding appellant from the possession of a part of the roadbed, thus severing its connection; but he rather should be required, for the sake of the public interest, to seek compensation in an appropriate proceeding. Of course there are cases in which ejectment is an appropriate remedy against railroads, and many such actions have been maintained, and the reports of them are found in the books, but they are mostly cases where the taking of the property in suit did not involve, as it does here, the absolute suspension of the performance of public duty by the company. Those cases, if any, which involved such injury to the public are wrong in principle, and should not be followed. This is not asking that railroads should be favored as litigants, but it simply is asking the enforcement and application of the maxim of enlightened jurisprudence—"that regard should be had to the public welfare is the highest law."

The present case is exceptionably favorable for the applica-

tion of the maxim. The railroad has been in constant use over the land for more than thirty years, and is now in operation. The plaintiff claims under a tax title for the state and county taxes for the year 1890, and yet the plaintiff's own evidence shows that the. taxes thereon for said year were paid by the railroad company. A palpable error of fact made by this court and the counsel in the case, the record of which was offered in evidence by the plaintiff, alone accounts for the anomaly. If ever there was a case for the enforcement of the maxim above refered to, this is the one, the one in which there is the least room to complain of wrong to an individual plaintiff.

The maxim, *salus populi suprema lex*, finds many illustrations in its application wherein private rights are as much, even more, abridged than they would be by its application to this case. A private house may be torn down when necessary to arrest the progress of a fire. *Russell* v. *Mayor of New York*, 2 Denio, 461. If a highway be out of repair, a passenger may lawfully go over the adjoining lands. *Taylor* v. *Whitehead*, Dougl., 749; *Dawes* v. *Hawkins*, 98 E. C. L., 230; *Campbell* v. *Race*, 7 Cush. (Mass.), 408. At common law, and without a statute, the property of a common carrier, necessary in his public business, could not be seized under execution; this for public convenience. *State* v. *Rives*, 5 Ired., 297; *Slee* v. *Bloom*, 19 Johnson, 456–475; *Goodrich* v. *Burbank*, 12 Allen (Mass.), 459.

*J. A. P. Campbell*, on same side.

The judgment must be reversed because of the incurable infirmity in the plaintiff's claim of title to the land in the southeast ¼ of the northwest ¼ of section 14. If he relies on the judgment of this court confirming his title, his claim fails. The description in that judgment is: "Thirty-eight acres in the southeast ¼," etc., and that is undoubtedly void. *Selden* v. *Coffee*, 55 Miss.; 41; *Dingey* v. *Paxton*, 60 Miss., 1038.

The same rule as to an ambiguity applies to a judgment as

to a deed or other contract.   *Claughton* v.  *Black*, 24 Miss., 185; Freeman on Judgments, sec. 50, and cases cited.

The conveyances to the plaintiff have the same defective description of the land, and if the superadded words they contain, viz.: "Known as the Carter homestead," etc., constitute a latent ambiguity, it was not removed by any evidence of what the Carter homestead was, therefore it is fatal as a patent ambiguity.

It matters not whether the conveyance of the land by the tax collector was void or not, or whether the evidence admitted to make certain the land sold was properly admitted, or was sufficient for that purpose, for that, if admissible and sufficient, cannot have any influence on the judgment relied on, or on the conveyances to the plaintiff.   The statute authorizes evidence of a certain kind in aid of tax collectors' deeds, but stops there, and has no reference or application to conveyances between other parties.   Because of the statute, certain descriptions in conveyances by tax collectors may be helped by parol evidence, but the statute applies only to such conveyances, and makes no change as to others, and it is a mistake to suppose that conveyances of land purchased at a sale for taxes may continue to be conveyed by an imperfect description, and that the statute may be invoked to aid them.

The record shows a recovery by the plaintiff by the description of a strip of land of the railroad of the defendant on that land for one-half mile without any reservation of the superstructure, when it is settled that the plaintiff is not entitled to more than the land without the railroad upon it.   *L.*, *N. O. & T. R. R. Co.* v. *Dickson*, 63 Miss., 380.

*A fortiori* will the rule be applied in this case.   It would seem that the recovery should be limited to the land, with stay of execution for such reasonable time as would enable the defendant to remove the structure or exercise the right of eminent domain.   The court has full control of its process, and may well so regulate it, for the sake of the public, as to serve

the public interest and yet preserve the right of a successful plaintiff in ejectment. The court will order restitution where a plaintiff recovering in ejectment takes possession of more than he is entitled to, and will interfere beforehand to restrain him from taking possession of more than he is entitled to. Adams on Ejectment, 341, 342.

I presume the court, on application, would stay execution in such case as this, and why not so modify a judgment of recovery as to prevent the necessity of a subsequent application to the court to protect the defendant? Why not administer justice at once according to the nature of the case? This would obviate all objection to maintaining ejectment against a railroad company and do no wrong to a successful plaintiff. I invite attention to *Railway Company* v. *Adams*, 27 Fla., 443.

Mr. Mayes' point seems to me good. It is this, in effect: Although the decree of this court vacates all claim of the appellant to the land described by numbers, and confirms appellee's claim to it, the court dealt with the land simply as land, and had the fact that the railroad is on it been known to the court, it would have excepted it from the operation of the decree (as it did as to the parcel of land in section 11), and since it now appears that the one hundred feet right of way is on the eastern edge of this land (dealt with heretofore as land), and it is not describable as land or liable to be dealt with as such, it is not embraced in the decree or affected by it, and it will be limited and restrained in its operation to land as such, and so as not to include the right of way, which had ceased to be mere land, and which was not in the contemplation of the court rendering the decree, and therefore, it being now disclosed that the railroad was, and is, on the land described as land merely in the decree, recovery of it should be denied as not embraced by the decree, which is for mere land.

The proposition on which this argument rests is fully established by this court and others. 72 Miss., 669; 68 *Ib.*, 29; 67 *Ib.*, 82; 66 *Ib.*, 518; 58 Ala., 546; 12 Iowa, 531; 37

Mo., 265; 21 Me., 533; 32 Cal., 499; 7 Neb., 33; 50 Md., 274, and cases cited; 50 Cal., 20; 54 N. H., 406; 35 N. J. L., 40; 48 N. Y., 77; 6 Bush, 127; 47 N. H., 62; 27 Ill., 54; 44 Ill., 248; 99 Mass., 31; 13 Pick., 492; Cooley on Taxation, 400 *et seq.;* Welty on Assessment, 142.  The principle is, that land separated by the use or purpose to which it is devoted, is no longer to be described or dealt with as mere land. The right of way was part of the unit composing the railroad and embraced in the commutation tax paid, and this now distinctly appears.  As it is certain that this court, on an original bill in equity, would relieve against the accident and mistake which produced the result, I do not see why it may not now administer justice by limiting the decree as proposed.

*Mayes & Harris*, on same side.

We submit that the court below should have sustained the motion to dismiss, for the reasons stated in the motion.  The plaintiff's own proof showed that the chancery court alone had jurisdiction of this particular case.  Mr. Thompson has briefed this branch of the case, and we commit the question to his argument.  The tax collector's deed and the decree confirming the same do not convey, and cannot convey, the railroad track and right of way, because the property is of such a nature that it is legally impossible for a tax title thereto to be acquired, under any state of circumstances, by an ordinary tax sale. Therefore, whatever might be the generality of the terms describing the land sold and conveyed, either in the deed or in the decree, the railroad track, etc., would not be conveyed thereby, such deed being as to such track void; and, if not void, the track, etc., is exempted therefrom by operation of law.

This sale took place in March, 1891, for the taxes of 1890, and, therefore, it is controlled by the provisions of the code of 1880.  Under that code there was a special arrangement which absolutely and entirely displaced the ordinary scheme for the assessment and taxation of railway property and for the col-

lection of taxes thereon.    That scheme is embraced in code,
§§ 597–608, inclusive.

Section 603 provides that when the valuation of the property
of a railroad shall be ascertained by the state board of assess-
ment, and certified to the auditor of public accounts according
to the provisions of the act, it should be the duty of the auditor
to ascertain the amount of tax due the state from each railroad
company and notify the company of the same, and, also, to cer-
tify to the clerk of the chancery court of each county in which
the railroad lies the amount to be taxed in the county for county
purposes; that the same should be entered upon the collector's
book and be collected as provided by law for the collection of
their taxes.

Section 604 provides that so far as the taxes assessed in be-
half of the state were concerned, if they were not paid the au-
ditor should collect the same by issuing a distress warrant
for the amount thereof, directed to any sheriff in the state,
whose duty it should be to levy the same upon any real or
personal property of the company to be found in his county,
and to sell the same as other property of like character is sold
for taxes.

By this scheme, then, it must certainly be seen that the state
tax on railroad property could be collected, and could be col-
lected only, by an actual warrant, issued out of the auditor's
office, placed into the hands of the sheriff, who should make an
actual levy, as in the case of execution, and sell the property at
a special sale thereon, as in a case of execution sale.    The en-
tire scheme of ordinary tax collection was displaced and had no
application whatever to the collection of said taxes on railroad
property.

So, also, in regard to the county tax.    It was impossible
legally to sell a railroad on any assessment made by the county
authorities.    The whole scheme of county assessment was dis-
placed, even as to county taxes, by the sections under consid-
eration.    By law it was impossible to fasten upon railroad

property any liability to the payment of taxes by a county assessment of the lands over which the railroad property ran or
through which it ran.   Under the code of 1880 it was a legal
impossibility for railroad property, as such, to be subject to
taxes or subject to sale for taxes, except on assessment made
by the state board on the railroad property, distinctively described as such, and certified to the chancery clerk's office, as
prescribed.   This whole business was outside of and apart·
from the ordinary scheme of tax collection as set forth in the
other provisions of the code.   Therefore, we maintain that, although LeBlanc's title to the west $\frac{1}{2}$ of the northwest $\frac{1}{4}$ of section 14, through which the railroad track and right of way ran,
might have been good (as by this court it was adjudicated to be
good) under his tax title, yet it was void as to the railroad
track and right of way, and the fee under it.   This court never
has held that these deeds were valid as to such property.

It cannot be said that the decree relied upon by LeBlanc confirms his title to such east $\frac{1}{2}$ of the northwest $\frac{1}{4}$ of section 14, and,
therefore, that it is too late now to agitate the question.   Not
only is it true that the decree was rendered *diverso intuitu*, and
does not pass upon this question at all, but there is still a further
reason why it does not have the effect of closing out the question as contended by plaintiff below that it did.   That reason
is this: The decree confirming a tax title is not of itself an independent source of title.   It is confirmatory and evidential in
its nature, and has no independent operation or power to create
title.   The express provision of the code (see § 498) is that the
decree shall be held as conclusive evidence that the title to said
land was, by the sale, vested in the complainant.   It fortifies
the tax deed, but it does only that.   It does not give to the tax
deed a distinct and independent scope and content which it
would not have apart from the decree.   The effect of the decree is to cut off all questions of regularity of the county assessment and of the ordinary sale, etc., but it does not attach a

conveying power to the sheriff's deed, whereby that deed transfers property which by law can only be transferred by a deed of entirely a different sort—that is, by a deed containing a distinctive description of the railroad property as must show on its face an assessment and sale of the railroad property as such, made in the manner in which the law required it to be made—all essentially different from the deed produced in this record and confirmed by the court.

In this connection we cite the recent decision of this court in the case of *Owens* v. *Yazoo & Mississippi Valley Railroad Co.*, in which the court held that an auditor's deed of 1888 was inoperative to convey lands lying outside of the levy, although such lands were expressly described therein by number. The principle is the same. If the auditor's deed could not convey them because they were not such lands as the auditor was authorized to convey, so here neither will the ordinary tax deed of the sheriff convey the railroad property as such, because railroad property as such is not by law authorized to be forfeited and conveyed by such proceeding as the deed in this case (even when fortified and made conclusive as evidence by a decree). Not under any possible state of circumstances. And how much stronger is the reason when the deed of the tax collector does not even purport to convey railroad property as such, and neither does the decree of the court.

If the fact that the property was railroad property (that is to say, a railroad track and right of way) takes it out from the operation of the tax collector's deed to the southeast $\frac{1}{4}$ of the southwest $\frac{1}{4}$ of section 11, notwithstanding it may be true that the ordinary county assessment of those lands was valid, and the ordinary sale of those lands was valid, and the law was in all respects fully complied with as to those lands, and the ordinary sheriff's sale as to them was in all respects valid and binding, then, for the same reason, the same law takes out the railroad track and right of way from the operation of the same deed, made under the same circumstances, as

to the east ½ of the northwest ¼ of section 14, and the decree does not, and cannot, import to the tax collector's deed a quality and force to convey other than that which belongs to it by law in those cases where the assessment and sale as made are regular and lawful.

The foregoing propositions are based on the idea that the deed is void as to the railroad track and right of way, and that the decree does not enlarge its operation. It is not necessary, however, to take so radical a position. It is sufficient to say that since the nature of railroad property is such as it is, and since the scheme devised by statute for the taxation of such property is as it is, then the law itself must except such property from the operation of a deed and decree such as this—that is to say, from a deed and decree which conveys ordinary tracts of land by ordinary land descriptions and does not profess to convey railroad tracts and rights of way, and which does not even profess to be based upon the special statutory proceeding devised by law to enforce taxation of that character of property, but, on the contrary, professes only to be the usual and customary proceeding to enforce the payment of taxes on lands of the ordinary sort.

3. The action of the court below was erroneous in rendering such judgment as it did render, because the deeds relied on, and the chancery decree carried, and could carry, only the fee of the lands, and not the railroad's easement over the same, nor its superstructure, because of public policy, said property being affected by a public use. This proposition will be presented fully in the brief filed by Mr. Thompson, and also in that filed by Judge Campbell. We shall not annoy the court by a third argument to the same effect. In order to support their proposition, however, along this line, we call the attention of the court to the following authorities: *Organ* v. *Railroad*, 39 Am. & Eng. Ry. Cas., 75, 87, 88; *Railroad* v. *Saltweddle*, 36 *Ib.*, 577, note pp. 579, 580; *Railroad* v. *Berkey*, 136 Ind., 591; *Foster* v. *Fowler*, 60 Pa. St., 27; *Wood* v. *Turnpike Co.*,

24 Cal., 478; *Railroad* v. *Parker*, 9 Ga., 393; *Green* v. *Marks*, 24 Ill., 221; *Gooch* v. *Gregory*, 65 N. C., 142; *Morgan* v. *Railroad* (Ind.), 28 N. E. Rep., 548.

*Cassedy & Cassedy* and *J. H. Price*, for appellee.

This is an appeal from a judgment in an action in ejectment from the circuit court, where LeBlanc had sued the railroad company for possession of certain lands embracing a portion of what is claimed to be a part of the right of way and main line of railroad track. This court, in *LeBlanc* v. *Illinois Central Railroad Co. et al.*, 72 Miss., 669, adjudicated LeBlanc to be the owner of the land in controversy. On the trial in the court below, the railroad company sought to avoid the effect of the judgment by offering evidence to show that the land was its roadbed and used in the operation of its road at the time of the sale for taxes through which LeBlanc claims title, and that it had paid the privilege tax required, and that, therefore, it was not liable to sale. We conceded that, had this defense been set up in the chancery suit reported in 72 Miss. and here referred to, it would have been a good defense. Subsequently, and after the action of ejectment had been instituted, the railroad company, by motion made before this court, sought to have the decree rendered in accordance with the opinion pronounced in that case changed, on the ground that it did not conform to the opinion of the court. This court, on that motion, held that, in the state of the pleadings and proof, it was proper to have rendered the decree quieting and confirming LeBlanc's title to the land in section 14. In the original case the cross bill averred the validity of the tax title to all the land in section 14 embraced by it. The railroad company answered and denied this. Issue was thus joined upon its validity. The deed was *prima facie* evidence that the sale was valid and passed title to the land. The burden of disproving this was upon the railroad company, which it might have done by proving the same facts offered in evidence of the title on trial of the action of eject-

ment, but this it neither did or offered to do, though the fact was within its knowledge.

The decision of this court in *Chiles* v. *Champenois*, 69 Miss., 603, is, if authority were necessary, directly in point here, and is conclusive of the question. It was a bill to remove clouds and quiet title. The answer denied the title, and, complainant offering no proof, the bill was dismissed. It was held that this was a final adjudication of the title against complainant, and was a bar to any subsequent suit asserting such title, the court saying: "Her title was put in issue by the pleadings, and, as to land owned by Cameron, was decided against her because of defect of proof." So in the chancery suit, LeBlanc's title was put in issue by the pleadings, and he made at least *prima facie* proof of it, which entitled him to a decree. The railroad company failed because of a defect of proof. Can it offer it now, when it had it then, and thus avoid the effect of the final decree of this court?

A party failing to assert a claim in a suit in equity in which it might have been litigated with propriety, will not be permitted afterwards to enforce it in a second suit unless his failure to do so in the first case was caused by the fraud of his adversary and was not attributable to his own negligence, is the language of this court in *Stewart* v. *Stebbins*, 30 Miss., 66. The rule here announced is approved by this court in *Moody* v. *Harper*, 38 Miss., 599, and *Buford* v. *Kersey*, 48 Miss., 642. See, also, *Bonney* v. *Bowman*, 63 Miss., 166, where it was held that a judgment at law, though founded upon a void contract and one against public policy, could not be impeached in equity; that the judgment precluded the defense, for the reason that it might have been interposed in the former suit.

It will not be contended but that the railroad company might with propriety, in the former suit, have set up its claim to the land in section 14, and shown by the proof it offers now that it constituted the roadbed, was used in the operation of its road, and that the commutation tax had been paid before sale, thus

invalidating LeBlanc's tax title.    It will not be claimed that it was prevented from doing this by any fraud of LeBlanc's, but is bound to be admitted on all hands that its failure to do so was attributable to its own negligence.

The abrogation of the well-established principles of law applicable to the subject for the benefit of this litigant, and because of a seeming hardship, will open the doors to litigation and unsettle titles in numberless cases where they have been quieted and confirmed.    Any owner to whose lands a tax title has been confirmed, ·has only to offer some legal defense to the title when sued in ejectment, which, if interposed in the suit to confirm, would have defeated it, and defeat the action.

"A valid judgment for the plaintiff sweeps away every defense that should have been raised against the action, and this, too, for the purposes of every subsequent suit, whether founded on the same or a different cause.    Nor will equity relieve the defendant of a judgment on any ground of which he should have availed himself in the action at law."

" The rule is well settled that a former judgment of a court of competent jurisdiction is final and conclusive between the parties not only as to the matter determined, but as to every other matter which the parties might have litigated and had decided as incident to or essentially connected with the subject-matter of the litigation within purview of the original action, either as matter of claim or defense."    21 Am. & Eng. Enc. L., 216–317, and authorities cited in the notes; *Ewing* v. *Mc-Nary*, 20 Ohio St., 322; *Covington Bridge Co.* v. *Sargeant*, 37 Ohio St.,. 237.

For a full discussion of the doctrine of *res adjudicata*, we refer the court to an extended note to *Lee* v. *Lee*, 96 Am. Dec., 775.    The authorities there quoted and cited are conclusive of the question here.    The only other objection to LeBlanc's title is that the tax deed does not sufficiently identify the thirty-eight acres sold.    The evidence in the case does identify it in the manner provided by § 3776, code of 1892.    The question

of jurisdiction was raised in argument that the circuit court did not have jurisdiction of an action of ejectment. Section 147 of the constitution removes such a question from the domain of reversible error.

Argued orally by *J. A. P. Campbell* and *Edward Mayes*, for appellant.

WILLING, Sp. J., delivered the opinion of the court.

This is an action of ejectment by the appellee to recover of appellant a tract of about six acres of land, situated in the east $\frac{1}{2}$ of the northwest $\frac{1}{4}$ of section 14, township 1, range 7 east, in the county of Pike. It was shown on the trial that about one-half of a mile of appellant's track was upon the land. The plaintiff in the lower court introduced in evidence, in support of his right to recover, (1) a tax collector's deed of the *locus in quo* executed to L. C. and M. Lenoir, March 2, 1891, by virtue of a sale of the land for the taxes of 1890; (2) deed from L. C. Lenoir to plaintiff, dated August 11, 1892, to the lands, also deed from M. Lenoir to plaintiff to the same, dated April 8, 1892; (3) the record of a chancery suit instituted by the Chicago, St. Louis & New Orleans Railway Company and the Illinois Central Railroad Company against the appellee and others, terminating with the decree of this court in the case of *LeBlanc* v. *Illinois Central Railroad Co.*, 72 Miss., 669; (4) tax receipts of Sallie Harrell for two acres west side of southeast $\frac{1}{4}$ of northwest $\frac{1}{4}$, section 14, township 1, range 7, for the years 1890 and 1891; (5) deed from A. J. Harrell and wife to Sarah Harrell and another, to the southwest $\frac{1}{4}$ and two acres in west side of southeast $\frac{1}{4}$ of northwest $\frac{1}{4}$ of section 14, township 1, range 7, the land being described by metes and bounds; (6) assessment rolls of Pike county for the years 1883, 1885 and 1889, showing two acres west side of southeast $\frac{1}{4}$ of northwest $\frac{1}{4}$, section 14, township 1, range 7 east, assessed to Sallie Harrell.

The defendant moved to dismiss the cause, (1) because the circuit court of Pike county had no jurisdiction of an action of ejectment; (2) because the evidence shows that before the bringing of this action the chancery court of Pike county, by plaintiff's cross bill, in the suit of the Chicago, St. Louis & New Orleans Railway Company against plaintiff *et al.*, had acquired exclusive jurisdiction of the subject-matter of this suit, and was exclusively competent to give the relief demanded.

The action of the court in overruling the motion is assigned as error. Counsel for appellant claim that as jurisdiction of certain suits to try title to land and to decree possession, etc., is vested by the constitution in the chancery court, and as section 156 has only given the circuit court jurisdiction of the matters enumerated in said section, that the circuit court has no jurisdiction, under the constitution, of the action of ejectment. Section 160 is as follows: "And, in addition to the jurisdiction heretofore exercised to try title and to cancel deeds and other clouds upon title to real estate, it shall have jurisdiction, in such cases, to decree possession and to displace possession," etc. Section 156 reads: "The circuit court shall have original jurisdiction in all matters, civil and criminal, in this state, not vested by this constitution in some other court." There has always been a well-recognized distinction, under the various constitutions and laws of this state, between "matters civil" and "matters in equity." The constitution of 1869 gave the circuit court jurisdiction in "all matters civil," and provided for the establishment of the chancery court, "with full jurisdiction in all matters of equity." Judge Simrall, in *Bell* v. *City of West Point*, 51 Miss., 270, in reference to the language used in conferring jurisdiction on the circuit court, says: "Dwelling a moment on the language used, it is broad enough to embrace suits at common law as well as in equity—'all matters civil.' But we know that the purpose was to create a court of common law cognizance, and we therefore give that import to the words. That is plain, from the history of

the past as well as from subsequent sections of the same article.
The sixteenth section provides for the establishment of chancery courts with full jurisdiction in all matters of equity, etc.
Reading the two sections together in the light of history, and
we have a superior court of original common law jurisdiction,
and a court of chancery with full jurisdiction in all matters of
equity.'' The framers of our constitution evidently intended
by all ''matters civil'' to mean matters of common law cognizance. The matters in section 160 of the constitution are matters of equity jurisdiction of which the chancery court had jurisdiction before the adoption of the constitution, in the exercise
of their general equity jurisdiction. In those matters it was
given jurisdiction to grant full relief to the successful litigant
by decreeing to him possession, etc., of the subject-matter of
the suit. Under any construction this court is without power,
under section 147, to reverse the judgment of the circuit court
for want of jurisdiction in that court.

The appellant objected to the introduction of the tax deed
and the deeds from L. C. and M. Lenoir to appellee, and the
decree confirming his title, on the ground of a patent ambiguity
in the description of the land in southeast ¼ of northwest ¼ of
section 14, township 1, range 7, east. The lands in the deed and
decree are described as fractional thirty-eight acres in said
southeast ¼ of northwest ¼, assessed to J. J. Carter. It is described in the same way in the deeds from L. C. and M. Lenoir
to appellee, except that in those deeds it is further described as
having formerly belonged to J. J. Carter, and was part of the
Carter homestead. The tax receipts and assessment rolls, and
the deed from A. J. Harrell and wife to Sallie Harrell and another, were objected to as being irrelevant.

Under § 491, code 1880, and § 3776 of the present code, the
evidence admitted was admissible to identify the land described
in the tax deed as being in the southeast ¼ of northwest ¼ of
the section. The roll of 1889 showed that fractional 2 acres in
west side of southeast ¼ of northwest ¼ of said section 14 was as-

sessed to Sallie Harrell. A description of land as a specified number of acres of the north, south, east, or west part of a particular legal subdivision is good. *Bowers* v. *Chambers*, 53 Miss., 259; *McCready* v. *Langsdale*, 58 Miss., 877; *Enochs* v. *Miller*, 60 Miss., 19.

It was held in *Dodd* v. *Marx*, 63 Miss., 443, that where the assessment roll furnishes the clue which, when followed by the aid of other testimony, conducts certainly to the land intended, such testimony is admissible. "It is admissible only to apply the description on the roll, which must give the start and suggest the course which, being followed, will point to the lands intended to be assessed." It was shown by the roll that two acres in west side of southeast ¼ of northwest ¼ was assessed to Sallie Harrell, and one of the deeds showed title in her to that two acres. The objection that the evidence offered was not admissible to remove the ambiguity in the description of the land in the decree is not well taken, as the decree validates the sale of the lands for taxes, in the tax deed, and confirms appellee's title under it, and declares that the deeds from Mrs. Harrell to him vested title in him to the lands described in the tax deed.

It is contended by appellant's counsel (1) that the deeds relied upon by the appellee, and the chancery decree, did not convey, and could not convey, the railroad track or right of way or fee under the same, the property being of such a nature that it is legally impossible for a tax title by tax collector's sale, under the general statutes, to be acquired thereto; (2) that the deeds relied on and the chancery decree carried, and could only carry, the fee in the land, and that neither the railroad's easement over the same nor its superstructure—because of public policy, said property being affected with a public use—were carried.

It is argued, in support of this contention, that under the code of 1880, §§ 597–608, inclusive, there was a special arrangement for the assessment and collection of taxes on railroad property entirely different from the provisions of the code

for the assessment and collection of taxes on other property, and as this was an ordinary tax sale of the land on which appellant's railroad was situated, the appellee acquired no title either to appellant's right of way or superstructure by virtue of the tax deed or the decree confirming the same.

We will not go into a discussion of the question as to the validity of the tax sale, nor as to whether appellant's right of way over these lands passed by that sale. An easement in lands is an interest in lands. 6 Am. & Eng. Enc. L., 143. The appellee, in the chancery court, by his cross bill, sought not only to have his title established, but to have all clouds removed therefrom, and the decree not only confirms his title, but cancels all interest, claim or privilege the appellant had in or to the same. The decree is conclusive as to the right of way. Did the superstructure the appellant had placed on the land pass by the tax sale to the purchasers? And is the appellant concluded by the decree as to it? This court, and the courts of Michigan, Iowa, Illinois, Minnesota, Wisconsin, Oregon, Pennsylvania, Alabama, Florida, Texas and other states have held that the general rule as to things affixed to the freehold by a trespasser or a person entering tortiously, is not applicable as against a body having the power of eminent domain, and entering without leave and making improvements for the public purpose for which it was created and given such power.

In *Toledo, etc., Ry. Co.* v. *Dunlap*, 47 Mich., 456, the court says: "The railroad company, whether rightfully or wrongfully, laid this track while in possession, and with purpose entirely distinct from any use of the land as an isolated parcel. It would be absurd to apply to land so used, and to a railroad track laid on it, the technical rules which apply in some other cases to structures inseparably attached to the freehold. Whatever rule might apply in case of abandonment, it is clear that this superstructure was never designed to be incorporated with the soil except for purposes attending the possession, and in proceeding to obtain a legal and permanent right to occupy the

land for this very purpose, there would be no sense in compelling them to buy their own property."

This case is cited by this court with approval in *Railway Co.* v. *Dickson*, 63 Miss., 380. Delivering the opinion of the court, Judge Campbell says: "The railroad company was a trespasser in constructing its road upon the land over which it had not acquired the right of way, but it still had the right to acquire the right of way, unaffected by the liability incurred for its trespass. The trespass committed is not involved in the determination of due compensation. The continuing right of the company to secure the right of way in accordance with its charter and the nature of its entry on the land and annexing chattels to the soil, distinguishes the case from that of an ordinary trespasser who affixes chattels to the freehold, and the rule of the common law, established when railroads were unknown, does not apply."

In *Daniels* v. *Railway Co.*, 35 Ia., 129, where, after a recovery in ejectment by the owner of the land and the railroad company instituted condemnation proceedings, the court held that the value of the improvement put on the land by the railroad company was not to be considered in assessing the damages.

In *Justice* v. *Railway Co.*, 87 Pa., 28, there had been a judgment in ejectment in favor of the landowner, and the court held that the recovery did not include the chattel put upon the land by the company and the structures they compose. To the same effect are *Jones* v. *Railway Co.*, 70 Ala., 227, and *Railway Co.* v. *Adams*, 28 Fla., 631, where the mandate was withheld by the supreme court for a reasonable time, to allow the railroad company to institute condemnation proceedings.

The land in this case was neither assessed nor sold as railroad property, nor for taxes due from the railroad company, but was assessed and sold under the general statutes on the subject of the assessment and sale of lands for taxes. Under our views, the title to the chattels put upon the land by the

appellant, and the structures under them, was not vested in the appellee, either under the tax sale or the chancery decree, and were not included in his recovery in this case.    The judgment of the circuit court is affirmed, but the mandate will be withheld a reasonable time to enable the appellant to institute and prosecute new condemnation proceedings to acquire a right of way over the lands.    7 Am. & Eng. Enc. Pl. & Pr., 705; *Railway Co.* v. *Adams*, 28 Fla., 631; 51 Am. & Eng. Ry. Cas., 544.