## CHATHAM GOLD DREDGING CO. v. BURNS et al.
### No. 8081.

Circuit Court of Appeals, Ninth Circuit.
July 27, 1936.

Julien A. Hurley and J. G. Rivers, both of Fairbanks, Alaska, and J. Joseph Sullivan, of San Francisco, Cal., for appellants.

Chas. E. Taylor, of Fairbanks, Alaska, for appellees.

Before WILBUR, GARRECHT, and MATHEWS, Circuit Judges.

GARRECHT, Circuit Judge.

This action was commenced by appellees to recover damages from appellants, for the destruction by fire of a quartz mill, mill building, and other contents, alleged to have been caused by the negligence of appellants in starting the fire and in failing to control it. Said building and contents claimed by appellees were situated on

a certain mining claim belonging to appellants.

A trial was had before the court without a jury which resulted in a judgment against appellants from which appeal is brought to this court.

Appellants purchased this claim· on July 13, 1931, and were ·the owners thereof on May 22, 1933, the date of the fire. Appellees contend that, at that time and ever since the year 1914, they and their predecessors in interest had been in the quiet and peaceful possession of that portion of the claim upon which the mill building and its contents were located, as lessees and tenants thereof, and were the joint owners of said mill building and its contents and in the peaceful possession thereof.

In their answer appellants denied that appellees were lessees or tenants of a portion of the mining claim or owners of the mill building and its contents. They also alleged that the mill building at the time the claim was purchased by appellant company was a part of the realty and by such purchase the company acquired ownership thereof.

Upon these issues the lower court found as a fact: "That for many years prior and up to the 22nd day of May, 1933, the plaintiffs, Lillian Blanche Burns and Luther C. Hess, were joint owners and in the peaceful possession of a four stamp quartz mill, fully equipped with boiler, engine, stamps, crusher, battery and all other parts and appliances (except motor power) ‾necessary and convenient for the operation of such mill, all being situated in a two-story frame building belonging to said plaintiffs and situated on a portion of that certain placer mining claim known and described as Bench Claim, opposite to and adjoining Creek claim No. Two (2) First Tier, Right Limit of Chatham Creek in Fairbanks Recording Precinct, Fourth Division of Alaska, that the plaintiffs and their predecessors in interest were lessees of that portion of said placer mining claim upon which the said mill building was located, and were tenants of the owners of said claim."

The court further found that appellees were damaged in the sum of $4,000, and entered judgment against appellants therefor.

The appellants assign these findings and conclusions as error. They also challenge the sufficiency of the evidence and urge in addition that the District Court erred in the admission of certain evidence of appellees, over objections properly and timely made and in refusing to grant appellants' motion to strike the same from the record.

Briefly stated, the evidence was that appellees, probably as early as 1914, had leased the mill site from the predecessors in interest of appellants and had erected thereon the mill and had placed therein the contents which were destroyed by the fire. The lease was in writing, had never been recorded, and had been lost. The parties to the lease, and the property covered thereby, were clearly established. There was controversy concerning· the provisions of the lease, as to the amount of rental and the duration of the term. However, the possession of appellees at the time of. the fire was well established.

As to the fire appellant King testified:

" 'I started the fire about 100 yards, or a little better, from the mill; I was working on the Creek flat, and when the fire got up to that contour (indicating on map), it was burning that way; after it had burned down in here (indicating on map), the wind changed and brought it back, and it came back here (indicating), and I paid no more attention to the fire, and the first I noticed was where I showed you in here, and it came down here and got on the trestle * * *.

" 'I co9ld see a little smoke coming up once in a while and I went ahead with my work; paid no attention to it; and the first thing I seen was the fire up there. I was watching this here where I was working, but there was no fire there, only some coals and smoke.' "

Over the objection of appellants, appellees were permitted to introduce oral testimony as to the contents of the lease. Besides the lease appellees introduced a deed from appellees' lessor to appellants' predecessor through which they deraign title which specifically recites that the portion of the mining claim conveyed ‾by the instrument and upon‾ which the mill was then situated was subject to the lease. It appears, too, that appellants knew of appellees' claim of ownership of the mill. Indeed, one of the appellants, Tom King, testified as stated in the record: "That he did not know as a fact that it [the mill] belonged to Burns, but he had been told so. That he was also told that there was a lease there but he did not take the trouble to find out. That· at one time he offered to pur-

chase some lumber from the mill from Mrs. Burns. That he was under the impression that they owned the quartz mill and the building, and that he was under that impression now. That Parks had told him about a lease. That he was not positive when it was, either in 1924 or 1925. That Warmbold had told him about the lease since the burning of the mill, and that he would not say but that it. was spoken of before, but he would not be positive as .to that. That he was under the impression it was spoken of before. That he had never told Mrs. Burns or Mr. Hess to take their mill away from there."

Other witnesses for the appellants who also were members of the company testified that at the time of the purchase of the mining claim they had knowledge of the lease.

The evidence of both parties indicated that the rental of the mill site was $100 per year. As to the payment of rental the testimony was that cash payments had been made for some time; that payments had also been made in assessment work and further; that after the mill was shut down the owner of the premises agreed not to charge rent unless the mill was used.

 There was a sufficient showing of the loss or inability of appellees to produce the original lease to warrant the admission of oral testimony in relation thereto. In any event, the testimony and admission of all parties furnish ample evidence of the salient facts. Likewise, the lower court did not commit error in admitting copies of the proceeding in probate, since it was necessary to prove the title of. Mrs. Burns, one of the appellees, to an interest in the property in suit, which fact the decrees tended to establish.

Appellants admit that the damage to the mill, the building, and contents was due to the fire started by Mr. King, and it is not contended that his want of care did not constitute negligence. But appellants insist, notwithstanding the negligence of King and appellees' claim and testimony as to the ownership of the destroyed property, that by reason of certain legal principles all the rights of appellants have been abrogated.

Appellants earnestly argue that: "It will not be presumed that because a lease was given and the lessees erected a building on the leased property and installed a stamp mill and machinery therein, that said property belonged to the lessees and

was removable during the term of the lease or at its termination." And again that: "The Court cannot, in the absence of testimony, presume that the lease, under which appellees claim, did not contain provisions relating to the right of the lessees to remove the building, stamp, etc., during or after the expiration of the lease. The burden of proof was upon the appellees to prove either that there was or was not such a provision. Until this was done the Court could not determine what law to apply—whether it should be the law of contracts or the general law relating to fixtures."

In this case the lease of the premises to appellees was from one Parks, who thereafter conveyed the mining claim to appellants' grantors. In the deed of conveyance to appellants' grantors other buildings and structures on the premises are particularly described as being transferred; but it is significant that the mill and mill building are omitted while the site itself is conveyed; subject, however, to the lease here in question. This fact tends to support appellees' position. Later, as heretofore shown, one of the appellants attempted to purchase part of the building, thus recognizing the title in appellees and which ownership was never questioned. It thus appears to have been the intention of all parties that this mill, building, and contents were removable trade fixtures.

 It is not necessary to determine when, according to its written terms, the lease would expire. The evidence is sufficient to establish that a lease had been entered into and that appellees had entered into possession thereunder and were still in possession of the property at the time of the fire with the knowledge and consent of appellants. No demand for possession had ever been made. To say the least appellees were tenants at will or by sufferance and this relation of tenancy had not been terminated in the manner provided by the statute of Alaska, or at all. The statute of Alaska provides as follows: "Estates at will or by sufferance how terminated. All estates at will or by sufferance may be determined by either party, by three months' notice in writing given to the other party; and when the rent reserved in a lease at will· is payable at periods of less than three months the time of such notice shall be sufficient if it be equal to the interval between the times of payment." Section 2864, Compiled Laws of Alaska, 1933.

■ The rule to be collected from the many cases decided on the subject is this, that a lessee's right to remove fixtures continues during his original term, and during such further period of possession by him, as he holds the premises under a right still to consider himself a tenant.

Whether this mill with machinery and contents became a part of 'the realty, and the question of the ownership of the property, was in this case a mixed question of law and fact. Upon few subjects have there been more numerous or more diverse decisions than upon this question of fixtures. Though no great difficulty appears at first sight in the definition itself, yet the application to particular facts has vexed the courts and given rise to an end-less conflict of decision.

The general rule of the common law, that whatever is once affixed to the free-hold becomes part of it and cannot after-wards be removed by a tenant, had an exception as to buildings and other fixtures for the purpose of carrying on a trade or manufacture, which was recognized almost as early as the rule itself. Van Ness v. Pacard, 2 Pet. (27 U.S.) 137, 7 L.Ed. 374; Taylor on Landlord and Tenant (9th Ed.) § 546.

Further, we are of the opinion that the relation of landlord and tenant existed be-tween the parties to this controversy and therefore, as pointed out by the author-ities, the liberal rule should be applied to the facts presented.

■ As between landlord and tenant, it has been said, more than in the case of any other relation, the greatest latitude and indulgence are to be allowed in favor of the tenants' claim to have particular articles considered as personal chattels rather than part of the freehold in inheritance. 26 C. J. 695.

"That articles which are annexed by the tenant for purposes of trade, known as 'trade fixtures', are removable by him as against the landlord, has been recognized from an early period in the development of the law of fixtures; the theory being that it is public utility that the tenant should be enabled to improve the property for the purpose of carrying on trade, with-out thereby forfeiting his improvements." 1 Tiffany, Modern Law of Real Property, § 240.

"The strict rule of the early common law under which chattels which had been physically annexed to the freehold became the absolute property of the landlord has been gradually and greatly relaxed in fa-vor of tenants. The first exception to this rule was made in the case of trade fixtures, so called, such as were placed upon the premises by the tenant during the term for the purpose of carrying on trade, com-merce, or manufacture. It is now a gen-eral rule that whatsoever is affixed, as a trade fixture to the land or to any building which is on the land during the term, whether made of wood, stone, iron, or oth-er material, is removable by the tenant at the end of the term. And it is difficult to conceive of any so-called fixture, how-ever solid, permanent, and closely attached to the realty which is placed there for the sole purpose of trade, which may not be removed by the tenant' at the end of his term." 2 Underhill, Landlord & Tenant, § 736.

"In modern times," says Chancellor Kent, "for the encouragement of trade and manufactures, and as between landlord and tenant, many things are now treated as personal property which seem, in a very considerable degree, to be attached to the freehold. The law of fixtures is in deroga-tion of the original rule of the common law, which subjected everything affixed to the freehold to the law governing the free-hold; and it has grown up into a system of judicial legislation, so as almost to ren-der the right of removal of fixtures a gen-eral rule, instead of being an exception. The general rule, which appears to be the result of the cases, is that things, which the tenant has affixed to the freehold for the purpose of trade or manufactures may be removed, when the removal is not contrary to any prevailing usage, or does not cause any material injury to the estate, and which can be removed without losing their essential character or value as personal chattels. The character of the property whether personal or real, in respect to fix-tures, is governed very much by the inten-tion of the owner, and the purposes to which the erection was to be applied." 2 Kent, Comm. (14th Ed.), 343; Couch et al. v. Welsh et al., 24 Utah, 36, 66 P. 600.

■ We think the evidence sufficient to sustain the finding of the court that appel-lees and their predecessors in interest were lessees of the premises whereon the mill building and contents were located at the time of the fire; that they were the own-ers of the property destroyed by fire and

for which the award of damages was made; and no error of law appearing, the judgment must be affirmed.