### UNITED STATES v. MALLERY et al.
### No. 477.

District Court, W. D. Washington, S. D.
Jan. 20, 1944.

J. Charles Dennis, U. S. Atty., of Seattle, Wash., and Guy A. B. Dovell, Asst. U. S. Atty., of Tacoma, Wash., for plaintiff.

DeWitt C. Rowland and John T. Mc-Cutcheon, both of Tacoma, Wash., for defendants.

LEAVY, District Judge.

On March 30, 1931, the defendant, Joseph A. Mallery, then being the owner of certain real property situated in Cowlitz County, Washington, at or near the town of Castle Rock, leased the property to the plaintiff, the United States Government, for a period of one year, with a renewal option for nine additional years. This lease was in writing and was duly recorded with the Auditor of Cowlitz County.

Among the covenants contained in the lease agreement is one that gives rise to this controversy, which reads as follows: "Structures placed in or upon or attached to the premises shall be and remain the property of the Government, and may be removed therefrom by the Government prior to the termination of this lease."

The real property described in the lease had no structures or buildings thereon, and it was known to all parties that the Government was leasing it for the purpose of making it available to its agency, the Civil Aeronautics Authority, for use in airways weather reporting. It was specifically covenanted in this Lease "that all buildings, poles, wire and other materials, structures and equipment needful for that purpose would be erected by the Government."

In 1931, the Government went into possession of the leased premises, and erected thereon numerous structures, necessarily used in connection with such airways weather reporting station, including a com-bination four-room house and office and a metal garage.

On the 8th day of April, 1940, about three months prior to the expiration of the original lease agreement, a second written lease agreement, for a period of one year from June 30, 1940, was entered into. This agreement contained numerous covenants identical with those in the original agreement, and the rental therein provided was the same. It contained a covenant granting to the Government the right, during the existence of such lease, to make alterations, additions, attach structures, signs, etc., and provided that the title to such property should be and remain in the lessee, the Government, and made no reference to existing structures erected by the Government during the life of the first lease. This lease agreement contained a further provision, specifically stating: "This lease replaces lease contract CAA7—631, dated March 30, 1931, which expires June 30, 1940."

There is no dispute but that the Lease Contract CAA7—631, above mentioned, is the original lease.

Some weeks before the expiration of the second lease, the agents of the Government began removing structures that had been placed upon the premises during its occupancy under the two leases. They removed all of such structures excepting the four-room house and the metal garage, and were in the process of dismantling and removing these on or about the 15th of June, 1941, when they were notified by the then owner, Joseph A. Mallery, that he claimed ownership of these structures, and requested that the matter of who was the actual owner of these buildings should be determined, and if it should ultimately be established that title rested in the Government, they should have the right, without any charge for rental or other claim, to go upon the premises and remove such buildings. The defendant, Joseph A. Mallery, asserted at the time that by reason of the clause in the original lease, which provided: "No renewal thereof shall extend the period of occupancy of the premises beyond the 30th day of June, 1940," the Government lost its right to remove the structures in question after the lapse of thirty days following the expiration of the first lease.

During the month of June, 1941, the defendant, Joseph A. Mallery, was negotiating with the defendants, Preston Moore and Ruth M. Moore, his wife, for the sale of

said property, and left with them an executed warranty deed with the name of the grantee in blank. On or about July 15, 1941, such sale was consummated by the payment from the Moores to Joseph A. Mallery of an agreed purchase price, and the names of Moore and wife were written by them into the warranty deed, said deed containing no exceptions as to the house and garage located upon the land.

The defendants Mallery and wife, during the time they were the record owners of the property, and their successors, Moore and wife, resisted the right of the Government to the removal of the buildings, and on January 5, 1943, this action was instituted, seeking a decree adjudging the Government to be the owner of the buildings, and authorizing it to go upon the premises and remove them.

This action was resisted by the defendants, making separate appearances. The defendants Mallery and wife, by their answer, denied jurisdiction of the Court over them, by reason of the plaintiff's not seeking affirmative relief of them, and they affirmatively alleged that the Civil Aeronautics Authority, the agency of government using the leased premises, and its Regional Manager, had knowledge that the defendants Mallery had sold the premises to the Moores, and that the plaintiff was guilty of laches and not entitled to relief sought in its complaint. The defendants Moore and wife filed an answer alleging, in substance, that they had purchased the property on or about the 14th of July, 1941, and that they had no knowledge of the claims of ownership being made by the Government to the buildings it had erected upon the premises, and, further, that they had no personal knowledge of any transactions between the defendant, Joseph A. Mallery, and the representatives of the plaintiff Government, also asserting laches on the part of the plaintiff, and further pleading that a letter written to the Regional Manager, Civil Aeronautics Authority, under date of December 5, 1940, some eight months after the execution of the second lease, by defendant Joseph A. Mallery, wherein he asserted ownership of the buildings in question, and advised said Regional Manager that the Government had no right to remove or injure them, gave them title to the buildings, as the Government had not denied such claim.

This matter came on for trial, based upon the issues made by the afore-mentioned pleadings. From the issues thus made and the testimony submitted, I find that the defense of laches pleaded by both defendants must be denied. The plaintiff, being the United States Government, can not be estopped from asserting its claim on the ground of laches. It is a well established rule of law that a sovereign, which can act only through its agents, can not be held responsible for the neglect or failure of such agents, where the right asserted by the sovereign is one based upon facts growing out of its discharge of its duty in a governmental capacity. 19 Am. Jur., Page 342, § 495; 30 C.J.S., Equity, p. 526, § 114.

In the case of San Pedro & Canon del Agua Co. v. United States, 146 U.S. 120–135, 13 S.Ct. 94, 98, 36 L.Ed. 911, it was said: "This last matter is also a sufficient answer to the second point made by the appellant, and that is that the prosecution of this suit is barred by laches, for, it is well settled that when the government has a direct pecuniary interest in the subject-matter of the litigation the defences of stale claim and laches cannot be set up as a bar."

In United States v. Mack, 295 U.S. 480–489, 55 S.Ct. 813, 818, 79 L.Ed. 1559, the Supreme Court said: "The point is faintly made that the government was at fault in failing to bring suit more promptly after the breach of the condition. * * * Laches within the term of the statute of limitations is no defense at law. * * * Least of all is it a defense to an action by the sovereign."

Coming now to the contention that the defendants Moore and wife were innocent purchasers, and therefore should be entitled to retain the structures that the Government had erected on the land, I find that the evidence on this issue clearly establishes:

1. That the original lease agreement, which ran for ten years, had been made a matter of record in the County where the premises are located;

2. The second lease agreement was known to be in existence by the Moores when they were negotiating for the property, and when they finally made payment for it;

3. The Moores lived in close proximity to the premises involved, and owned most of the land adjoining it, and they saw the agents of the Government removing var-

ious structures that had been erected upon the premises for the purposes of carrying on weather station activities. It was they who notified the defendants Mallery when the Government agents were dismantling the buildings.

4. Such notification caused defendant Mallery to contact the Regional Manager of the Civil Aeronautics Authority at Seattle, Washington, and dismantling proceedings were halted, pending a final determination of the issue of title to the buildings.

5. Moore testified at the trial of this cause that, in addition to the warranty deed taken from Mallery and wife, he secured a written guarantee that if the buildings were removed by the Government, he, Moore, would be given back the purchase price he paid for the property.

I, therefore, find that defendants Moore and wife were not mislead as to the Government's asserted·claims, and the evidence fails to support the defense of being innocent purchasers, without notice.

All of the defendants rest their defense upon the provision in the first lease, which reads: "No renewal thereof shall extend the period of occupancy of the premises beyond the 30th day of June, 1940." It is their contention that the second lease agreement, covering the period from June 30, 1940, to June 30, 1941, did not carry with it the rights existing in the Government at the expiration of the first lease.

They cite and rely upon the cases of Spencer v. Commercial Co., 30 Wash. 520, 71 P. 53, and Bernard v. Crosby, 121 Wash. 257, 209 P. 524.

■ This contract, being one executed in this State, and the subject matter thereof being located in the State, would be governed by the construction placed upon similar contracts by the highest Court of the State.

The rule stated in Spencer v. Commercial Co., supra, is that where no reservation for the removal of fixtures placed under a former lease is made in a subsequent lease, the right to remove such fixtures is thereby precluded, but the Court, in announcing the rule, also stated certain limitations.

In Bernard v. Crosby, supra, the Court unqualifiedly stated the rule to be that where a new lease is accepted, and no reservation made, the fixtures placed by the tenant upon the freehold become the property of the landlord. An examination of this case, however, indicates that the facts were substantially different from those in the instant case, as the lessee in the second lease was only one of three parties named in the first lease, and the tenants for whose use the fixtures were constructed had left them in the building and made no claim to them, and, likewise, made no transfer of their interest to their co-tenant, and that there was no intention to subsequently remove them. From these facts, as stated in the opinion, the case is readily distinguishable from the one presented here, and supports the rule approved in the Spencer case, supra, where it was said that a tenant, holding over in such a way as to raise an implication of an extension of the original lease, would retain his right to remove fixtures erected by him.

An examination of other cases decided by the Supreme Court of the State of Washington indicates a substantial liberalization of the rule which calls for a forfeiture of the tenant's fixtures, as will be presently noted.

■ The general rule in reference to the effect of a new lease upon the right to fixtures that were expressly reserved to the tenants in an existing lease is discussed rather fully in 22 Am.Jur., Page 759, § 46, and it is there stated, with regard to the forfeiture rule: "That it was the majority rule in the early stages of the controversy * * *. But a rule so often repudiated, or at least not applied because of exceptions and qualifications, can hardly be regarded as the general rule; and, whatever may have been its status in the early years of its history, the modern tendency is clearly toward its curtailment by exceptions, qualifications and distinctions, if not toward its complete eradication by avowed repudiation."

In 26 C.J. 695, § 81, the rule is stated: "As between landlord and tenant, it has been said, more than in the case of any other relation, the greatest latitude and indulgence are to be allowed in favor of the tenant's claim to have particular articles considered as personal chattels rather than as part of the freehold * * *". See, also, 36 C.J.S., Fixtures, § 34.

In Lynn v. Waldron, 38 Wash. 82–86, 80 P. 292, 293, being a case involving the right of ownership and possession of certain buildings, the Supreme Court of Washing-

568

ton, in distinguishing Spencer v. Commercial Co., supra, relied so strongly upon by the defendants herein, said: "It is true that it was decided by this court in that case that where a tenant enters into a new lease, making no mention of a former lease or tenancy, and with no reservation for removal of fixtures placed under the former lease, his right to remove fixtures is thereby precluded. * * * But it is especially stated in that opinion that this rule does not apply when the tenant merely holds over without a new demise, under permission from the landlord, *or in such a way as to raise an implication of an extension of the original lease * * *.*" (Italics mine)

Again, in Ballard v. Alaska Theatre Co., 93 Wash. 655–663, 161 P. 478, 482, the rule is stated: "When the annexation is made by a tenant or licensee, the presumption is that he did not intend to enrich the freehold, but intended to reserve title to the chattel annexed in himself * * *."

The federal authorities appear, without exception, to have adopted the non-forfeiture rule concerning fixtures. In the case of Bergh v. Herring-Hall-Marvin Safe Co., 2 Cir., 136 F. 368, 373, 70 L.R.A. 756, the Court said: "There can be no presumption that a tenant intends to present his personal property to his landlord because the lease fails to give him the right to remove it. He has that right without regard to the landlord's wishes and nothing short of conduct which amounts to an estoppel and evinces a clear intention to abandon his property can deprive him of that right. The law does not favor forfeitures."

In Chatham Gold Dredging Co. v. Burns, 84 F.2d 717, at page 720, which case comes from the 9th Circuit, it is stated: "The rule to be collected from the many cases decided on the subject is this, that a lessee's right to remove fixtures continues during his original term, and during such further period of possession by him, as he holds the premises under a right still to consider himself a tenant."

It is clear that the rule adopted in this State concerning rights of a tenant to fixtures, where he reserved title in an original lease, when applied to a new lease, is not so explicit and narrow as to ignore the intent of the parties at the time of execution of the new lease. The facts and circumstances in connection with the execution of such new lease should be carefully considered and given such expression as was intended, and as is indicated by the lease.

In this case it is to be noted: First, that the lessee was the Government of the United States, and could act only through its agents; and, second, that such agents, some three months before the life of the original lease had expired, and when substantial investment had been made by the lessee for the purpose of carrying on its governmental activity at this place, through negotiation with the landlord, entered into a new lease, extending the right to use the premises for an additional year, for the same purposes, and upon the same terms and conditions as those contained in the original lease, with the same rental payment, and which provided specifically: "This lease *replaces* Contract CAA7—631, dated March 30, 1931, which expires June 30, 1940."

The word "replaces" is defined by Webster as follows:

"1. To place again; to restore to a former place, position, condition or the like;

"2. To take the place of, to serve as a substitute for or successor of; supplant;

"3. To fill the place of; to supply the equivalent for;

"4. To restore,"

The word "renew" is defined by Webster as follows: "6. To replace; also to restore to fullness or sufficiency."

These two words are synonymous and interchangeable insofar as they apply to this second lease agreement.

The fact that the first lease specifically stated that it should expire on June 30, 1940, would not, of course, be a bar to the parties' negotiation for a renewal thereof, and that is what the Court must find actually occurred in this case, and that is what the parties must have had in mind when the second lease was executed.

I find that the property involved herein belongs to the plaintiff, the United States Government, and has at all times since it came into being, and the judgment will be that the Government is the owner thereof, and whoever may be the owner of the fee of the premises, upon which this property is now situated, will permit the agents of the Government to remove the same therefrom.

It might be stated further that since title to the property in question is in the United States Government, and has at all

times since its construction been Government property, it cannot be disposed of except as provided by law, and there is a very comprehensive procedure set up by Congress for the disposition of Government property. It cannot be forfeited through the oversight, carelessness, negligence, or even intentional conduct of any of the agents of the Government. Title can pass from the Government only in the manner detailed by Congressional enactment, and will not pass by default or forfeiture.