BERGSTROM v. KUGRUK MINES, Inc., et al.
No. 3498.

District Court of Alaska. Second Division. Nome.
June 23, 1944.

C. C. Tanner, of Nome, Alaska, for plaintiff.

O. D. Cochran, of Nome, Alaska, for Magids Bros.

Ira D. Orton, of Seattle, Wash., for trustee in bankruptcy.

MORISON, District Judge.

It appears from the record before us that in the year 1939 a mining enterprise known as the Kugruk Mines, Inc., leased from Jerry Coffin and Henry Coffin certain mining claims known as the Homestake, Bessie and Nellie claims, and which are located in the Fairhaven Mining and Recording District of Alaska. That said corporation entered into the possession of said mining claims under the terms of said lease, and engaged in opening up, working and developing the same during the years 1938–1940, inclusive; that said corporation in the pursuit of its business became indebted to Magids Brothers, a mercantile copartnership composed of Boris Magids and Elizabeth Cross, and doing business at Deering, Alaska, near said mining operation, in the following amounts:

For goods, wares and merchandise the sum of $20,505.28; for transportation of freights and passengers the sum of $1,320.50; and for goods, wares and merchandise sold and delivered to defendant Kugruk Mines, Inc., by John Lichtenberg, of Nome, Alaska, and assigned to said Magids Brothers, the sum of $656.75, making a grand total of $22,-489.96.

It further appears that suit was brought by said Magids Brothers on these claims on November 12, 1940, and a writ of attachment was issued and levied apparently on all

the property of the said Kugruk Mines, Inc., as shown by the return of the officer executing the writ, except the mining claims which were being operated.

It also appears that on the 19th day of March, 1941, one A. Edwin Bergstrom filed suit No. 3498 against the said Kugruk Mines, Inc., and in which cause he also made the Murphy Diesel Co., of Milwaukee, Wis.; the Hydraulic Supply Co., of Seattle, Washington; Carl Halberg, and the executors, administrators and heirs of Karl Thiele, deceased, defendants, to recover a balance alleged to be due him of $1,101.15, with interest until paid; also the further sum of $776.80 for work and labor done and performed by Ervin C. Kearne and which amount the said Kearne assigned to plaintiff A. Edwin Bergstrom; and also the further sum of $935.40 for work and labor done and performed by Alfred Karmum and which amount the said Alfred Karmum assigned to plaintiff A. Edwin Bergstrom; and also the further sum of $256.85 for work and labor done and performed by Evans Karmum and which amount the said Evans Karmum assigned to plaintiff A. Edwin Bergstrom; and also the further sum of $516.79 for work and labor done and performed by Andrew Anderson, and which amount the said Andrew Anderson assigned to the plaintiff A. Edwin Bergstrom; and also the further sum of $594.07 for work and labor done and performed by Brooks Hanford and which amount the said Brooks Hanford assigned to the plaintiff A. Edwin Bergstrom; and also the further sum of $829.15 for work and labor done and performed by Mel Olsen, and which amount the said Mel Olsen assigned to plaintiff A. Edwin Bergstrom, making a grand total of $5,010.21, and for which amount he sues together with interest from date due until paid; and for reasonable attorney fees. And for the purpose of securing the payment of these debts notice was duly given by all of said parties pursuant to the lien laws of Alaska of their claim of liens on the following described property alleged to be located in the Fairhaven Recording Precinct, Second Division of Alaska, to wit:

1—frame building used for engines and known as the engine house.

1—frame building used for drying clothes and known as the dry house.

1—frame building used for housing of Amalgamator.

1—frame building (16′ X 20′) garage building.

11—homosote bunk houses.

2—plywood bunk houses (16′ X 20′).

18—Carmen steel cots (used in bunk houses).

18—spring filled mattresses (used in bunk houses).

8—Duo-therm heaters (used in bunk houses).

1—homosote cook house, together with miscellaneous cooking equipment.

3—steel oil tanks (each 500 gallon capacity) equipped with pumps.

1—Hillman airplane drill, equipped with Fairbanks Morse 3 H. P. gasoline engine.

8—big flood lights.

6,000 ft. copper wire.

1—frame blacksmith shop and miscellaneous tools.

1—Black Hawn steel tool box and tools.

2—hydraulic jacks (20 ton capacity).

2—stap jacks (10 tons capacity).

Miscellaneous picks and shovels.

1—Lincoln electric welder and equipment.

100 ft. rubber cable.

400 feet. hydraulic iron pipe, 11″ diameter, 20 ft. long.

400 ft. hydraulic iron pipe, 12″ diameter, 20 ft. long.

400 ft. hydraulic iron pipe, 14″ diameter, 20 ft. long.

400 ft. hydraulic iron pipe, 16″ diameter, 20 ft. long.

400 ft. hydraulic iron pipe, 19″ diameter, 20 ft. long.

5—12″ gate valves.

2—16″ gate valves.

3—No. 1 hydraulic giants.

1—No. 2 hydraulic giant.

79—ft. of steel boxes, 36″ wide, together with rubber riffles.

1—hydraulic elevator.

2—Murphy Diesel pump engines, connected to two Fairbanks Morse pumps, and all mounted on drag or godevil.

2—Placer King steel draggs or godevils, 18 ft. long.

2,000 ft. of ⅝ cable.

1—acetylene welding outfit, including torches.

1—Denver amalgamator equipped with electric motor.

1—Cove Diesel electric generator, type SA 200 Serial DI7691.

1—Delco 2,500 watt light plant, Model 304d1. Serial 387729.

1—Kirk Hillman prospect drill and equipment.

1—18 ft. boat.

Pile of lumber cut to build garage 18 ft. X 20 ft.

10—rolls mathoid roofing.

2—small Lang cookstoves.

300 bbls. (50 gallons capacity each) Diesel oil.

10 bundles plywood sheets (size 4' X 10').

10—kegs nails, various sizes.

Miscellaneous carpenter tools.

Miscellaneous caterpillar tractor parts.

5—large tarpaulins.

1—Thomas water heater.

¾ cask quicksilver.

1—Harvey radiophone, Type M. 25 Mode, Serial 3199.

1—battery charger, Model E2, Serial 15885.

1—small gasoline pump, equipped with hose and suction.

1—small hand pump, equipped with hose and suction.

400 lbs. welding rods.

1—electric washing machine.

1—ton blacksmith coal.

1—ton anthracite coal.

All of said property being located on and in the vicinity of placer gold mine claims Homestake and Bessie. Said claims being located on the Kugruk river in the Fair Haven Recording Precinct, Second Division, Territory of Alaska.

Also

1—plywood bunk house (16' X 20').

1—16 ft. cedar boat equipped with Johnson outboard motor. .

This property is located at 9 Mile Point which is about nine miles east of Deering, in the Fair Haven Recording Precinct, Second Division, Territory of Alaska.

It also appears that the Murphy Diesel Company of Milwaukee, Wisconsin, and the Hydraulic Supply Company of Seattle, Washington, sold to the said Kugruk Mines, Inc., certain machinery and equipment under what is commonly known as conditional sales contracts, and which concerns are now claiming the right to have such machines paid for in full or to be surrendered to them. It also appears that on the 15th day of March, 1941, a petition in bankruptcy was filed by the Northern Commercial Company of Seattle, Washington, and in which matter one E. T. Lottsfelt was duly appointed trustee and immediately took charge of the assets of the said Kugruk Mines, Inc.

In consequence of this bankruptcy action, the attachment of the assets of said Kugruk Mines, Inc., by Magids Brothers, having been made within four months next preceding the adjudication of the bankruptcy of said Kugruk Mines, Inc., was dismissed.

From this statement of the case, and there is no controversy about the facts thus far, it is manifest that the real question before us is to determine what parties thereto, if any, are entitled to have mechanic's liens declared in their favor; the respective amounts thereof; and also to what particular property, or properties, if any, such liens apply.

On this subject the statute declares:

(1) "Every person who at the instance of the owner performs any work or labor in, on or about a mine, or mining claim * * * in opening up, developing * * * stripping, shoveling, mining, hoisting, firing, cooking, teaming,

or performs any other class or kind of work necessary or convenient to the development, operation working or mining thereof; * * * or who performs work or labor on any water right, ditch, flume, pipe line * * * road or trail used in connection with the opening up * * * operation or development thereof * * * shall have a lien on such mine or mining claim * * * as security for the payment of such work or labor." Compiled Laws, § 2002.

(2) "Every person who, at the instance of the owner performs work or labor in any capacity on, in or about a mill or machine, either in the alteration or repair thereof, or in the operation or working thereof, while the same is used in or about a mine or mining claim * * * as a means of opening up, developing or mining * * * shall have a lien on such mill or machine, to secure the payment of the amount due for such work or labor." Compiled Laws, § 2003.

(3) "The liens provided in sections 2002 and 2003 of this article shall be preferred liens prior and superior to any mortgage, conditional sale agreement, attachment, claim or demand, unless the same be in writing and be filed for record in the recorder's office of the precinct wherein the property subject to the lien may be situate, prior to the commencement of the work or labor for which such liens are claimed, and no sale, transfer, mortgage assignment or attachment made or filed for record subsequent to the commencement of such work or labor shall have the effect of postponing such liens." Compiled Laws,. § 2004.

And in another section of the Compiled Laws it is further declared that: "Such owner's, mortgagee's or claimant's interest therein shall be subject to any lien filed in accordance with the provisions of this article, unless such owner, mortgagee or claimant shall within ten days after he shall have obtained knowledge of such work or labor being performed, give notice that he will not be responsible for the same by posting notices to that effect * * * in one con-

410

spicuous place on such * * * mill or machine, and in the case of a mortgagee or other lien claimant, give additional notice of the nature of the lien, the amount due thereon and refer to the volume and page where his claim of lien is recorded." Compiled Laws, § 2007; Session Laws 1935, Ch. 40.

This was not done by either the Murphy Diesel Company or the Hydraulic Supply Company, consequently any right to repossess their alleged property has been abandoned and forever lost.

Another important question which arises in this case is whether or not any part of the machinery or other appliances used in said mining operation, or the fourteen or fifteen plywood and homosote buildings erected by the defendant Kugruk Mines, Inc., upon this mining property thereby became a part of the realty, or whether they remain personal property and as such are liable for the unpaid wages of the laborers who were employed in this mine development.

On this question the courts have said: "[The Code of Alaska] providing for and authorizing foreclosure of mechanics' liens, should be liberally construed, but such liens, being of purely statutory creation, can be established only by a substantial compliance with the statute." Russell v. Hayner, 9 Cir., 130 F. 90, 2 Alaska Fed. 271.

And further that "The safe and proper rule of construction of mechanic's lien statutes is that, while the remedial portions of these statutes should be liberally construed, with a view to avoid defeating the purpose of the statute, yet these parts upon which the right to the existence of the lien depend, being in derogation of the common law, should be strictly construed." Johnson et al. v. Halls et al., 7 Alaska 638; Irvine v. McDougall et al., 5 Alaska 300; Morris v. Marsh, 3 Alaska 140, 144.

"As between landlord and tenant, greatest latitude is to be allowed in favor of tenant's claim to have particular articles affixed to freehold considered personalty rather than

part of the freehold." Chatham Gold Dredging Co. v. Burns et al., 9 Cir., 84 F.2d 717, 5 Alaska Fed. 838.

"That articles which are annexed by the tenant for purposes of trade, known as 'trade fixtures', are removable by him as against the landlord, has been recognized from an early period in the development of the law of fixtures; the theory being  *  *  *  that the tenant should be able to improve the property for the purpose of carrying on trade, without thereby forfeiting his improvements." Id.

"The general rule, which appears to be the result of the cases, is·that things, which the tenant has affixed to the freehold for the purpose of trade or manufactures may be removed, when the removal is not contrary to any prevailing usage, or does not cause any material injury to the estate, and which can be removed without losing their essential character or value as personal chattels. The character of the property whether personal or real, in respect to fixtures, is governed very much by the intention of the owners, and the purposes to which the erection was to be applied." Id., 84 F.2d 720, 5 Alaska Fed. 838.

Furthermore, in construing these statutes governing this section we are confronted at the outset with positive declaration therein that mechanics' liens may be declared on "mines or mining claims," "mills or machines", or "dumps," and nothing more; that a "mine or mining claim" shall be construed to mean a "block or parcel of mining ground"; that "the term 'mill' or 'machine' shall be construed to include any dredge, steam, internal combustion or electric shovel, dragline, tractor, scraper, hoist, engine and boiler, derrick, drill, roasting or reduction works, stamps, roller or other mill, concentrator, conveyor, elevator or other machinery used in or about a mine in digging, hoisting, conveying, washing or blocking out mineral contents therein, or reducing the same to a commercial value, while the said mill or machine is used in connection with the operation of the mine and is not a fixture and included in the term mine." Compiled Laws, § 2001.

412

■ This language is clear and unmistakable; and therefore we cannot get away from these very positive declarations, nor by or through any sort of definitions or' constructions, expand this statute to cover houses, beds, boats or oil, even though the owners of the mine have made no objections.

■ From all of which the Court is of the opinion that the said A. Edwin Bergstrom is entitled to and is hereby declared to have a mechanic's lien, to the extent of $5,010.21 together with interest, costs and reasonable attorney fees.

Plaintiff may prepare findings of fact, conclusions of law and decree in accordance herewith.