**ANDERSON–TULLY CO. v. UNITED STATES.**

No. 13026.

United States Court of Appeals
Fifth Circuit.

May 16, 1951.

194

Lamar Williamson, Monticello, Ark., R. L. Dent, Vicksburg, Miss., for appellant.

Elizabeth Dudley, Roger P. Marquis, Attorneys, Department of Justice, and J. Edward Williams, Acting Assistant Attorney General, Department of Justice, all of Washington, D. C., and Joseph E. Brown, U. S. Atty., Jackson, Miss., for appellee.

Before HUTCHESON, Chief Judge, and BORAH and RUSSELL, Circuit Judges.

BORAH, Circuit Judge.

This is a proceeding brought by the appellee, United States of America, to condemn a tract or parcel of land located in Warren County, Mississippi, and owned by appellant, Anderson-Tully Company. The land to be used by the Army in connection with the control of floods on the Mississippi River.

The land is located approximately a mile and a half north of the City of Vicksburg, Mississippi, on the east bank of the Yazoo Diversion Canal which connects the Yazoo River with the Mississippi River. It has an area of approximately eight acres but only about 0.4 of an acre is free from overflow during high water. About 3½ or 4 acres are under water for a considerable part of each year and the remaining portion of the tract is normally considered the bed of the stream since it is below the standard low water line and extends out to the thalweg close to the middle of the river. Immediately east of the tract and on a level with the 0.4 of an acre of fast land is the right-of-way of the Illinois Central Railroad Company with a switch track running into the land taken, and to the east of the right-of-way is United States Highway No. 61.

From October 27, 1924 through June 30, 1945, the Government continuously occupied the land under various leases and extensions from appellant. One such lease agreement, dated July 1, 1937, provided, among other things, that the Government should have the right during the existence of the lease, to make alterations, attach fixtures, and erect structures which "shall be and remain the property of the Government and may be removed therefrom by the Government prior to the termination of this lease." This lease also provided that "no renewal thereof shall extend the period of occupancy of the premises beyond the 30th day of June, 1941." On July 1, 1941, the parties entered into the lease agreement under which the property was held by the Government prior to the institu-

tion of these proceedings. This lease provided that no renewal thereof should extend the period of occupancy of the premises beyond June 30, 1945, and further provided, as in the aforementioned lease, that the Government should have the right to attach fixtures and erect structures, which should remain the property of the Government and might be removed prior to the termination of the lease.

In the year 1933, the Government placed 47,000 cubic yards of earth fill on the 0.4 of an acre of fast land. And during the period of its tenancy erected warehouses, mooring pilings, and a piling structure to carry pipelines which were used to move oil from barges moored in the canal. None of these structures had been removed by the Government when the petition in condemnation was filed.

When the Government's last lease expired on June 30, 1945, Anderson-Tully refused to again renew it; whereupon the Government informed the landowner that it would acquire the premises by deed or through condemnation and it continued in possession of the property. On July 31, 1945, the United States filed a petition [1] in condemnation to acquire the fee simple title to the land and on the following day the District Court entered an order authorizing immediate possession and confirming occupation of the land since July 1st of that year. On April 11, 1946, a declaration of taking was filed and $6,000 was deposited in the registry of the court as estimated just compensation for the property. Thereafter, on April 16, 1949, the court entered judgment on the declaration of taking, vesting title to the lands in the United States. A trial was had before a jury in July, 1949, to ascertain the just compensation to be paid to Anderson-Tully for the property and a verdict was returned fixing

its value at $12,500. A judgment was entered confirming the award and from that judgment Anderson-Tully has appealed.

The appellant contends that the trial judge erred: (1) in refusing to permit proof of the cost of reproducing or replacing the condemned area; (2) in excluding evidence as to the market value of fixtures and structures on the land which had not been removed by the Government; and (3) in refusing Anderson-Tully the right to open and close the evidence and argument.

No error was committed by the court below in refusing to permit appellant to present evidence as to the cost of reproducing or replacing the condemned area. The character of the evidence sought to be adduced was not "reproduction" evidence in the usual sense, that is relating to the cost of reproducing structures or other improvements to the land, but was evidence as to the estimated cost which would be incurred if someone wished to fill and otherwise improve an adjacent tract of land in order to make it physically identical to the land taken. This evidence was properly excluded. Orgel, Valuation Under Eminent Domain (1936), Sec. 187, p. 586.

It is well recognized that where private property is taken for pubic use, and there is a market price prevailing at the time and place of taking, that price is just compensation.[2] The Government produced six expert witnesses, all of whom were familiar with industrial property along the Vicksburg waterfront and the market value thereof. These witnesses, having from ten to forty-nine years of experience in the real estate and land appraisal business, considered the favorable features of the land taken as well as those unfavorable and fixed its fair market value at amounts ranging from $6,000 to $8,100. Although the evi-

---

1. The petition in condemnation was filed in the United States District Court for the Southern District of Mississippi under the provisions of the following Acts of Congress: Act approved August 1, 1885, 25 Stat. 357 and acts supplementary and amendatory thereof, 40 U.S.C.A. § 257 et seq.; the River and Harbors Act approved July 18, 1918, 40 Stat. 911, 33 U.S.C.A. §§ 594, 595; the Flood Control Act of May 15, 1928, 45 Stat. 534, 33 U.S.C.A. § 702a et seq.; and the Flood Control Act of August 18, 1941, 55 Stat. 638; and the War Department Civil Appropriations Act of 1938, approved July 19, 1937, 50 Stat. 515.

2. United States v. New River Collieries Co., 262 U.S. 341, 344, 43 S.Ct. 565, 67 L.Ed. 1014.

dence shows that there had been few sales of industrial sites along the canal and waterfront prior to the institution of these proceedings, there was a sale in October, 1945, of a 1.6 acre tract located nearby on the Mississippi River. This river property is used by Cities Service Corporation as an oil terminal, the highest and best use to which the condemned area could be put, and in the opinion of these experts was comparable to the land taken by the Government. This 1.6 acre tract sold for a consideration of $10,000, or approximately 21¢ per square foot. In comparison, the lowest value placed on the land in question by any witness was $6,000, or approximately 35¢ per square foot for the 0.4 of an acre of fast land. As opposed to this testimony appellant's witness, Luttman, fixed the fair market value of the land at $45,000. The jury awarded $12,500.

Much of the voluminous testimony was developed by appellant in an effort to prove that there was no property in the Vicksburg area comparable to the land taken. We do not gain this impression from our reading of the record. Quite to the contrary, the evidence clearly reveals that there are several vacant tracts of land along the canal which are capable of being used as an oil terminal and, being larger in area and located behind the seawall, are in fact superior for that purpose to the land taken.

We turn now to appellant's contention that the court erred in excluding evidence as to the value of the piling structure which was placed on the condemned land by the Government and not removed therefrom prior to the expiration of the last lease on June 30, 1945. The appellant insists that both by the law of fixtures and by express contract the piling became a

part of the realty and must be included in the award for just compensation. We think otherwise. It was recognized by the Supreme Court as early as 1829[3] that the general rule of the common law, that whatever is once affixed to the freehold becomes a part of it and cannot afterwards be removed by a tenant, was subject to exception in the case of buildings and other fixtures placed on the premises for the purpose of trade or manufacture[4] and not intended to irrevocably become a part of the realty.[5] As between landlord and tenant, the greatest latitude and indulgence are to be allowed in favor of the tenant's claim that certain articles should be considered personalty rather than a part of the freehold.[6] This is especially true in the case of governmental bodies exercising the right of eminent domain.[7] And in determining whether an object remains personalty or becomes a part of the realty, the courts in the United States have almost universally accepted the so-called intention test.[8] In the case at bar the United States expressly reserved title to improvements placed upon the land and there can be no presumption that the Government intended to confer public property upon appellant.[9]

Appellant further contends that the fixtures became its property when the 1937 lease expired on June 30, 1941, and the Government entered into the new lease of July 1, 1947. The short answer is that the record fails to disclose that the piling was attached to the premises during the term of the 1937 lease. But be that as it may, appellant's contention is without support in good logic and sound principle. Of course, there is authority for the proposition that a tenant's right to remove fixtures or improvements placed upon the premises during the term of a lease is lost to the

3. Van Ness v. Pacard, 2 Pet. 137, 27 U.S. 137, 7 L.Ed. 374.

4. Chatham Gold Dredging Co. v. Burns, 9 Cir., 84 F.2d 717.

5. Searl v. School District No. 2, 133 U.S. 553, 561, 10 S.Ct. 374, 33 L.Ed. 740.

6. United States v. Mallery, D.C., 53 F. Supp. 564; 26 C.J. 695, 36 C.J.S., Federal Courts, § 34.

7. See Futrovsky v. United States, 62 App. D.C. 235, 66 F.2d 215.

8. Teaff v. Hewitt, 1 Ohio St. 511; Love v. Union Central Life Ins., 168 Miss. 408, 411, 150 So. 794; for article re present status of the intention test see 12 N.Y. U.L.Q. Rev. 66.

9. Searl v. School District, 133 U.S. 553, 562, 10 S.Ct. 374, 33 L.Ed. 740.

tenant by the taking of a new or renewal lease which does not mention any claim to the fixtures, notwithstanding his actual possession has been continuous. This principle, however, has been so often repudiated, qualified, and distinguished that it can hardly be regarded as the majority view. Its early formulation was undoubtedly influenced by the sound principle that the tenant should not be allowed after he has given up possession of the premises, to reenter and disturb the possession of succeeding interests.[10] But when the tenant does not give up possession of the premises, all reason for the rule disappears. We think that the better view is that a lessee's right to remove erections made by him in furtherance of the purpose for which the premises were leased continues during his original term and during such further period of possession as he holds the premises under a right still to consider himself a tenant.[11]

Nor did the piling become appellant's property on the termination of the Government's last lease on June 30, 1945. Appellant argues that between that date and the time when the present condemnation proceedings were instituted on July 31, 1945, the Government occupied the premises as a trespasser and had no right to remove the fixtures which, therefore, became its property at that time. We do not agree. The Government's original entry was with consent of the owner and there is no showing of bad faith on its part.[12]

But even if a contrary conclusion was warranted the appellant could derive no comfort therefrom because "the general rule as to things affixed to the freehold by a trespasser or a person entering tortiously is not applicable as against a body having the power of eminent domain, and entering without leave, and making improvements for the public purpose for which it was created and given such power." Illinois Cent. Railroad Co. v. Le Blanc, 74 Miss. 650, 673, 21 So. 760, 762. And the condemnor may later condemn the property without being required to pay more than the value of the land without the improvements.[13]

Finally, appellant complains that the court below refused to allow it the right to open and close the evidence and argument. We are in no doubt that the burden of establishing the value of the lands condemned was upon the owner[14] and not upon the Government. We think it clear, however, that the appellant was not prejudiced by the ruling that the Government had the burden of proving value and hence the right to open and close the case. Furthermore, such a ruling may not be the basis of an assignment of error.[15]

For the reasons stated, the judgment is

Affirmed.

10. Kerr v. Kingsbury, 39 Mich. 150, 153–154; Lewis v. Ocean Navig. & Pier Co., 125 N.Y. 341, 26 N.E. 301; Radey v. McCurdy, 209 Pa. 306, 58 A. 558, 67 L.R.A. 359; Chatham Gold Dredging Co. v. Burns, 9 Cir., 84 F.2d 717, 720.

11. Chatham Gold Dredging Co. v. Burns, supra; United States v. Mallery, supra.

12. See Searl v. School District, 133 U.S. 553, 10 S.Ct. 374, 33 L.Ed. 740; Consolidated Turnpike Co. v. Norfolk & O. V. Ry. Co., 228 U.S. 596, 602, 33 S.Ct. 605, 57 L.Ed. 982; U. S. v. Smith, D.C., 110 F. 338.

13. Railroad Co., Illinois Cent. v. Le Blanc, 74 Miss. 650, 21 So. 760; Atchison T. & S. F. Ry. Co. v. Richter, 20 N.M. 278, 148 P. 478, 484, L.R.A.1916F, 969 and the many cases there cited; 2 Lewis on Eminent Domain, § 759 (3rd ed.).

14. United States ex rel. Tennessee Valley Authority v. Powelson, 319 U.S. 266, 273, 274, 63 S.Ct. 1047, 87 L.Ed. 1390.

15. United States v. Savannah Shipyards, 5 Cir., 139 F.2d 953, 956.