UNITED STATES of America

v.

**84.4 ACRES OF LAND, MORE OR LESS,** Situate **IN WARREN COUNTY, STATE OF PENNSYLVANIA,** Lester M. Sheldon and Charlotte M. Sheldon, His Wife, and Fannie M. Sheldon.

**Lester M. Sheldon, Charlotte M. Sheldon and Fannie M. Sheldon, Appellants.**

No. 14854.

United States Court of Appeals Third Circuit.

Argued Nov. 9, 1964.

Decided July 14, 1965.

Milton D. Rosenberg, I. C. Bloom, Bloom, Bloom, Rosenberg & Bloom, Washington, Pa., for appellants.

Elizabeth Dudley, Dept. of Justice, Land Div., Appellate Section, Washington, D. C. (Ramsey Clark, Asst. Atty. Gen., Gustave Diamond, U. S. Atty., Robert E. Tucker, Asst. U. S. Atty., Pittsburgh, Pa., Roger P. Marquis, Atty., Department of Justice, Washington, D. C., on the brief), for appellee.

Before BIGGS, Chief Judge, and FORMAN and SMITH, Circuit Judges.

FORMAN, Circuit Judge.

This is a condemnation suit in which the appellee (United States) has exercised the power of eminent domain in

taking the appellants' (Sheldons') private property for the Allegheny River Reservoir Project, and for the construction of the Kinzua Dam.

The Sheldons, at the time of the taking, were the owners of a tract of land comprising approximately 84.4 acres located in the scenic Allegheny Mountains. When the Sheldons acquired the property they found it heavily wooded, but about 65 acres of the tract were subsequently cleared of timber and rocks and a nine hole public golf course built upon it. The premises were further improved by the addition of a pro shop, club house, driveways, parking lot and irrigation system. The other approximately 20 acres remained timberland.

Condemnation of this tract was instituted by the United States, a declaration of taking was filed, and estimated just compensation of $92,300 was deposited in court. At the trial, Lester M. Sheldon, who was the principal manager of the property, valued the 84.4 acres and the structures thereon at $220,600. The Sheldons also presented four expert witnesses who, through use of the reproduction method of valuation,[1] offered opinions as to the worth of the tract. Three of these four were real estate experts who appraised the property respectively at $200,000, $202,000 and $205,000. They testified that they used the reproduction method of valuation because they did not find any sales of golf courses which they believed to be comparable sales.

The first three experts testified that their analyses were assisted substantially by the estimate made by the Sheldons' witness, William F. Gordon, a golf course architect. He testified that using the reproduction method of valuation it would cost $165,396 to reproduce the golf course alone, not considering buying land or constructing buildings. Mr. Gordon stood firm in stating, under cross-examination, that it was physically impossible to select a site in the immediate area of the Shel-

dons' tract, or even within a limit of 100 miles, comparable to the one taken. Mr. Gordon's testimony indicated that he felt that identical elevation was a necessary element in finding a comparable property and to reproduce the 84.4 acre tract within 100 miles at its present elevation, timberland would again have to be cleared, no suitable land being available. Thus, though $80,596 of his $165,396 figure represented a sum necessary, in his view, to reproduce the course, itself, the remaining $84,800 represented the cost of clearing the trees, rocks, stones, stumps and roots from approximately 65 acres of a hypothetical 84.4 acre tract as a prerequisite to the construction of the course. Mr. Gordon considered this figure a necessary and usual cost of building a golf course. The District Judge, however, ordered the $84,800 figure eliminated from Mr. Gordon's estimate on the ground that the jury was to consider the cost of reproducing the golf course on the land as it was at the time of the taking.

The United States produced three expert witnesses. Mr. Ault, a golf course architect, testified as to the reproduction cost of the course, itself, leaving the land purchase, land clearance, and other construction aside. His figure for reproducing the exact nine hole facility was $57,400. He also testified that to produce a nine hole golf course to meet the minimum standards set by the Green Association would cost $83,317.50. The District Judge allowed this latter figure to go to the jury but only to indicate the potential value of the land to a ready, willing and able purchaser, who might seek improvement of the existing facility.

Mr. Samuelson, a real estate expert for the United States, valued the entire property at $87,000. He based his estimate in part on Mr. Ault's golf course reproduction figure and on the sale of three golf courses which he considered to be comparable properties. Mr. Samuelson

1. It was commonly conceded that the three methods of valuation employed are those of reproduction cost, comparable sales and income analysis. The income ap-

proach was not used by either the experts of the United States or the Sheldons as a method of valuation in this case.

described the three courses in detail pointing out their similarities and dissimilarities. The Sheldons objected to the use of these properties as evidence of the fair market value of their condemned 84.4 acres on the ground that the properties described by Mr. Samuelson were not comparable and should not be considered by the jury as a guide to the fair market value of their condemned land. The District Judge overruled these objections and admitted this evidence for the jury's consideration.

Mr. Kane, a third expert witness for the United States, valued the condemned property at $97,000. He testified that he considered a number of factors in reaching his conclusion, among other things, sales of other properties including golf courses, and reproduction costs of certain of the structures erected on the land.

The jury returned a verdict of $97,000 on which an order for judgment was entered. The Sheldons filed a motion for a new trial, which was denied.[2] This appeal followed.

—I—

The Sheldons challenged the propriety of the use of comparable sales by the United States as evidence of the fair market value of their condemned 84.4 acres. Though conceding that it is within the discretion of the trial court as to whether the comparable properties are sufficiently similar to the condemned property to warrant submission of them to the jury for consideration in arriving at an award, the Sheldons urge that the testimony as to the comparability must be clear and convincing and that this case presented such unique factors that the standard was not met.

■ Though it appears from the record that none of the other experts used Mr. Samuelson's three comparable sales in evaluating the condemned property, this does not advance the proposition urged upon us by the Sheldons. Furthermore, the mere fact that there were unique elements such as the mountain setting of the condemned course which distinguished it from the alleged comparable sales, did not, as a matter of law, prevent the District Judge from submitting those other golf course sales to the jury. If sufficient similarities existed between the condemned tract and the properties sought to be used as comparables, an appellate court will not overrule a trial court's use of its discretion in allowing the jury to determine for itself whether the described properties were in fact comparable to the condemned tract, and if found comparable, what weight should be given thereto.

■ In this case each of the three alleged comparable sales took place in an adjoining New York County, no further than 50 miles from the Sheldons' tract. All three courses were open to the public. Two had nine hole golf courses; the other had two nine hole courses. All three had frame buildings upon the land used as club houses, pro shops, or for storage. The acreage involved in the sales was not so grossly disproportionate to the 84.4 acre condemned tract that no comparison would be meaningful. Two of the three comparables had been sold within three years of the trial; the other within five years thereof. Though there were differences in setting and in detail, we cannot say that the District Court, involved with a type of property of which sales were not numerous, abused its discretion and thereby prejudiced the Sheldons in admitting these three sales for jury evaluation.

■ The Sheldons go further and argue before us that even if the District Judge did not abuse his discretion in admitting the three properties, he failed to adequately instruct the jury as to the standards to be used in weighing the value of such evidence. No charge was offered by the Sheldons on this point. No specific objection on this ground to the District Judge's charge was made prior to the jury's retirement as required by Federal Rule of Civil Procedure 51. Thus, the substantive point urged has not been preserved for appeal. We see

2. United States v. 84.4 Acres of Land, etc., 224 F.Supp. 1017 (W.D.Pa.1963).

no plain error that would excuse this procedural omission by the Sheldons.

—II—

The Sheldons contend that it was error for the District Judge to have eliminated the figure of $84,800, the cost of clearing approximately 65 acres of timberland, from Mr. Gordon's estimate of $165,596 for reproducing the golf course, itself.

The District Judge charged:

" * * * You should not consider the cost of reproducing the golf course, the cutting, the cost of cutting timber land and removing boulders, stones, brush, stumps, roots, and otherwise improving some other tract of land in that locality in order to make it physically identical to the land taken.

"Thus, you should not consider the estimate of Mr. Gordon in the sum of one hundred and sixty-five thousand dollars as the cost of reproducing this golf course on timber land in the vicinity. * * * "

Both the District Judge in his opinion [3] and the United States in its appeal brief argue that the elimination of the $84,800 figure was proper on the ground that the Sheldons were not to be indemnified for entering into a bad bargain in choosing to expend resources to clear timberland. Their position is that value will be duplicated if the jury is allowed to consider clearance costs in that the property was in a substantially cleared condition at the time of the taking, the posture in which its value is to be determined.

Reliance is placed on Anderson-Tully Co. v. United States,[4] in which the United States Court of Appeals for the Fifth Circuit held that the trial court had properly refused to permit the introduction of evidence as to the cost of reproduction of the condemned tract, itself, without structures, on a spot adjacent to that condemned parcel. The following was stated:

" * * * The character of the evidence sought to be adduced was not 'reproduction' evidence in the usual sense, that is relating to the cost of reproducing structures or other improvements to the land, but was evidence as to the estimated cost which would be incurred if someone wished to fill and otherwise improve an adjacent tract of land in order to make it physically identical to the land taken. This evidence was properly excluded."[5]

The basis for the Fifth Circuit's ruling lay in its observation that:

"Much of the voluminous testimony was developed by appellant in an effort to prove that there was no property in the Vicksburg area comparable to the land taken. We do not gain this impression from our reading of the record. Quite to the contrary, the evidence clearly reveals that there are several vacant tracts of land along the canal which are capable of being used as an oil terminal and, being larger in area and located behind the seawall, are in fact superior for that purpose to the land taken."[6]

The Sheldons seek to counter Anderson-Tully by pointing to the testimony of Mr. Gordon who was of the opinion that there were no comparable cleared tracts within a 100 mile radius. He stated this on cross examination in the following colloquy:

"Q. In other words, on the day before the taking, September 18, 1961, would it have cost eighty-four thousand eight hundred dollars to clear the site on which the Kinzua Valley Golf Course was located? [Objection interposed and overruled.]

"A. I did not base my quotation with any thought of building a golf course on that site.

"Q. Then what site were you considering when you submitted

---

3. Ibid.

4. 189 F.2d 192 (5 Cir. 1951).

5. Id. at 195.

6. Id. at 196.

that eighty-four thousand dollar figure?

"A. A comparable site.

"Q. A comparable site? Was that comparable site as clear as the site on which the Kinzua Golf Course was or was it wooded?

\*  \*  \*  \*  \*  \*

"A. It is physically impossible as far as I am concerned to select a piece of property in this immediate area. I will give you a limit of one hundred miles, to find a site comparable to the one that you are taking or have taken, to build a golf course on, unless you find the same conditions that were there when they built that golf course originally.

"Q. Mr. Gordon, did you inspect the area within a one hundred mile radius of Kinzua?

"A. I have flown over this entire area.

"Q. Did you notice farm land in this area?

"A. There is farm land all over the area, but that is not comparable to that site.

"Q. I show you Plaintiff's Exhibit 1, an aerial view of the golf course, and it has been testified that the left side is a farm. Looking at that photograph, does that farm area—is that farm area as clear as the golf course area?

"A. To begin with, it is one hundred feet lower than—at least one hundred and probably more than one hundred feet lower than the existing property we are talking about. I do not

think he can be asked to accept a piece that is not at the elevation he has now.  \*  \*  \*"

Through Mr. Gordon's testimony, the Sheldons limit their argument to what they consider to be the peculiar facts of the case and do not contend that under all circumstances clearance costs should be included in a reproduction figure. Indeed, such a broad argument would fall directly within the District Judge's reasoning here as it would clearly give the owner of a condemned parcel a windfall merely because he had spent a sum to clear land, when a like parcel in a cleared state could now be bought for less than the price of raw property plus the cost of clearance.

However, there is Mr. Gordon's testimony in this case that no cleared comparable land was available. If so, this factor would enhance the value of the existent cleared land to a willing purchaser. On the other hand, there is also evidence, produced through the colloquy with Mr. Gordon, which tends to demonstrate that he may have been too strict in his view of what constituted a comparable tract of land. As in the instance of Mr. Samuelson's comparable sales, discussed in I above, we are of the view that the jury should have been given an opportunity to determine whether comparable sites were available. If they accepted Mr. Gordon's conclusion that no cleared comparable land was reasonably available, they would be entitled to weigh his estimate of $84,800 as part of the reproduction cost of the property. If the jury concluded that the alleged uniqueness of the property was not significant, and that comparable cleared sites were available, they would ignore the $84,800 figure. Under the facts of this case, those alternatives should have been left open to the jury.[7]

7. In Anderson-Tully, the Fifth Circuit agreed with the trial court's ruling that comparable land was in existence in a physical condition akin to the condemned land and that the cost of reproducing the character of the condemned land, itself, on an adjacent tract of land could not, as a matter of law, enter the case. There is no indication that the condemnee there introduced evidence to the contrary. It appears, therefore, that the Fifth Circuit appropriately supported the exclusion of such a reproduction cost as a matter of law. With the evidence at variance in the instant case, however, a jury question is created.

We find no merit in the remaining contention relating to other elements of the District Judge's charge on the reproduction approach to valuation. Except for his treatment of the $84,800 clearance cost estimate, the District Judge had properly charged, and then underscored, the elements of this method of valuation. However, for the reasons discussed above, the judgment of the United States District Court for the Western District of Pennsylvania will be reversed and the cause remanded for a new trial.