UNITED STATES of America
v.
206.82 ACRES OF LAND, MORE OR LESS, IN WAYNE COUNTY, PENNSYLVANIA, and Cusacks Fairway Inn, Inc., et al.

Civ. No. 6502.

United States District Court
M. D. Pennsylvania.
May 8, 1962.

Bernard J. Brown, U. S. Atty., Scranton, Pa., for the Government.

Herman Gottfried, Margaretville, N. Y., Anthony A. Lawrence, Scranton, Pa., Louis A. Fine, Honesdale, Pa., for defendant.

SHERIDAN, District Judge.

This is a motion for a new trial filed by the United States in a condemnation proceeding in which there was a jury verdict of $69,350.00 in favor of the defendant (landowner).

Anna M. Wellenbrink, defendant, was the owner of one of several tracts of land with improvements which were taken by the United States Government for erection of the General Edwin Jadwin Dam at Dyberry Township, Wayne County, Pennsylvania. The interest taken was a perpetual flowage easement. Under this easement defendant was prohibited from maintaining or erecting any buildings for human habitation on the tract. The United States deposited $43,500.00 in the Registry of the Clerk of the Courts at the time the declaration of taking was filed, as an estimate of fair compensation for the taking. The defendant was not satisfied with this sum, whereupon the United States filed the instant action.

The condemned property consisted of 69.72 acres of land. The improvements were a main dwelling house, bungalow, garage with an apartment and recreation room, barn, stable, milk house and tool shed, swimming pool, steam bath, spring house and servants quarters. These structures were in excellent condition. The land was extensively landscaped with fine shrubbery and trees. In addition, the land bordered on the Dyberry Creek where swimming and boating facilities were available. Both parties were in agreement that the property's highest and best use would be that of a country estate.

Defendant's expert valued the property at $102,000.00 at the time of the taking, and $2,000.00 after the taking. Two experts for the Government valued the property, respectively, at $45,000.00 and $43,000.00 at the time of the taking, and at $1,850.00 and $4,200.00 after the taking. While the experts based their opinions to some extent on sales of property in the general area, these were not comparable sales because defendant's property was unique.[1]

Over the objection of the Government, a building contractor, Fred N. Hendricks, testified on the reproduction cost, less depreciation, of the main dwelling house, bungalow, garage and recreation room, barn and stable and milk house. He estimated $55,063.50 as the reproduction cost of all these structures.

The Government contends the court erred in admitting this testimony, and in refusing to instruct the jury that "reproduction and restoration costs should

---

1. The experts for both parties agreed the property was unique.

   At least one of the Government's contentions was also unique. One of its experts testified the property was "over-shrubbed"—in an attempted answer to defendant's evidence of the beautiful shrubbery on the property. The Government argued that Mrs. Wellenbrink loved nature so much that she had an excessive amount of shrubbery on her property; that this was a feature which would not be attractive to an ordinary buyer; and, thus, was a factor which did not enhance the value of the property.

be disregarded as an element of market value."

The Fifth Amendment to the Constitution of the United States provides that private property shall not be taken for public use without just compensation to the landowner. The measure of just compensation is generally the property's market value fairly determined as of the date of the taking. United States v. Miller, 1943, 317 U.S. 369, 373, 374, 63 S.Ct. 276, 87 L.Ed. 336. If the Government takes a perpetual easement to flood the land intermittently, the measure of compensation is generally the difference in the fair market value of the property as of the date of the taking less the fair market value after the taking. 293.080 Acres of Land, etc. v. United States, W.D.Pa.1959, 169 F.Supp. 305; United States v. Virginia Electric & Power Co., 1961, 365 U.S. 624, 632, 81 S.Ct. 784, 5 L.Ed.2d 838.

In determining just compensation based on market value, evidence of recent sales of similar parcels is a desirable standard. United States v. 13,255.53 Acres of Land, etc., 3 Cir. 1946, 158 F.2d 874, 876. Market value based on comparable sales is not the only standard by which just compensation is to be measured. Hickey v. United States, 3 Cir. 1953, 208 F.2d 269, 279. As stated in United States v. Miller, supra, "It is conceivable that an owner's indemnity should be measured in various ways depending upon the circumstances of each case and that no general formula should be used for the purpose."

With respect to reproduction cost, some courts have favored a broad rule of admissibility and consideration of such evidence in condemnation cases. Hickey v. United States, supra; Cade v. United States, 4 Cir. 1954, 213 F.2d 138, 141; United States v. City of Jacksonville, Arkansas, 8 Cir. 1958, 257 F.2d 330, 333, 334. Other courts have permitted evidence on reproduction cost where there is an absence of or a few comparable sales. United States v. Certain Interests in Property, etc., E.D. Ill.1958, 165 F.Supp. 474, 481. See also,

United States v. Benning Housing Corporation, 5 Cir. 1960, 276 F.2d 248, 251. The admission or rejection of evidence of estimated reproduction cost is within the trial court's discretion. Bowie Lumber Company v. United States, 5 Cir. 1946, 155 F.2d 225, 229. If a substantial part of the value of the property is traceable to the structures and other improvements, it is an abuse of discretion to refuse to permit the jury to be informed as to the value of the structures. Clark v. United States, 8 Cir. 1946, 155 F.2d 157, 161.

The challenged testimony was admitted on the authority of Hickey v. United States, supra. In that case Chief Judge Biggs said:

"The final assignment of error asserts that the trial court refused to hear certain evidence of depreciation of the condemned property admissible on the issue of replacement cost. Replacement cost is admissible as evidence of value in condemnation proceedings and was so employed by the condemnees in the instant case. The condemnees, however, based their case primarily upon market value of the condemned property, and introduced evidence of replacement value only incidentally.

"The United States is correct in stating that when replacement cost is used as evidence of value depreciation must be taken into account. United States v. Boston Cape Cod & N. Y. Canal Co., 1 Cir., 1921, 271 F. 877, 889; In re United States Commission, 1924, 54 App.D.C. 129, 295 F. 950, 954–959. But at no time when the condemnees introduced evidence of replacement cost did the United States attack that evidence because depreciation had not been taken into account. The United States could of course have objected at the time but did not. The assignment will not be considered as constituting reversible error since it lacks the foundation of an objection in the court below."

The Government attempts to distinguish the Hickey case. In its brief it states:

"The case of Hickey vs. United States, 208 F.2d 269, cert. den. 347 U.S. 919, [74 S.Ct. 519, 98 L.Ed. 1074], is not contrary to the observations made in the preceding paragraphs. In that case there were no comparable sales or rental income for consideration and the sale of the same property some few years before was questionable, although the Court said that replacement cost is admissible in condemnation proceedings. It was made clear that the condemnee offered such evidence only incidentally ([208 F.2d] p. 279)."

The simple answer to this is that in the Hickey case there were comparable sales. The court said:

"The point at issue is the relative weight to be given to the recent prior sales of the property condemned and to recent sales of other, comparable property. As between the two, it is the position of the United States that a prior sale of the precise property condemned was, as a matter of law, entitled to more weight, than sales of comparable property.

\* \* \* \* \* \*

"While it is true that prior sales of the condemned property eliminate any question as to whether another sale was of a comparable piece of property, nevertheless the comparison of sales of other properties have their advantages too. For example, the sale of another property may be closer in time to the date of the taking, and therefore would reflect more accurately the condition of the market at the time of the taking. In the instant case sales of other properties which took place within a few months of February 6, 1951 were testified to."

There is no basis for the statement that there were no comparable sales in the Hickey case. Furthermore, even if the Hickey case is to be limited to such a situation, it still controls the case at bar because the sales used by the experts were not comparable to defendant's property.

At the conclusion of the evidence the jury was instructed that there was no necessary relationship between reproduction cost and market value; that depreciation must be considered in connection with reproduction cost; and that the compensation should be assessed in terms of the property's fair market value based on all the evidence in the case. The Government did not except to the charge other than to object to the refusal to charge that the reproduction cost should be disregarded.

■ The verdict was fair to the Government. It should consider itself fortunate that the verdict was not higher.

The motion for a new trial will be denied.