**UNITED STATES of America, Plaintiff,**

v.

**585.87 ACRES OF LAND, MORE OR LESS, OSAGE COUNTY, KANSAS; Harold Featherston; Bonnie L. Featherston; Kansas City Power and Light Company, a Corporation; the Board of County Commissioners of Osage County, Kansas; the County Treasurer of Osage County, Kansas et al.; and Unknown Owners, Defendants.**

No. T-2144.

United States District Court
D. Kansas.
Sept. 20, 1962.

Newell A. George, U. S. Atty., and Elmer Hoge, Asst. U. S. Atty., Topeka, Kan., for the government.

Harry T. Coffman, Lyndon, Kan., and Paul L. Aylward, Ellsworth, Kan., for landowners.

ARTHUR J. STANLEY, Jr., Chief Judge.

Five hundred eighty-five and eighty-seven hundredths acres of land in Osage County, Kansas, the property of Harold Featherston, was taken by the United States, January 23, 1959. The amount of estimated just compensation, $132,900, was deposited in the registry of the court. On February 9, 1959, immediate delivery of possession was ordered. By order entered March 19, 1959, a stipulation was approved by the court under the terms of which full and complete possession of all of the tract except the improvements and adjacent grounds was to be taken by the United States on May 15, 1959, the owner to remain in possession of the improvements until September 1, 1959. The

stipulation further provided for the taking of the improvements by the owner at an agreed price, to be deducted from the amount of just compensation finally determined to be due the owner.

A commission was appointed and on June 8, 1961, filed its report, finding the amount of just compensation to be $150,-600, including the sum of $1,600 stipulated crop damage, and assessing interest on the deficiency. On June 28, 1961, the commission amended its report by striking all reference to interest and awarding to the land owner as just compensation the sum of $150,600, including $1,600 stipulated crop damage.

The land owner objects to the amendment to the report, moving that the amendment be set aside insofar as it deletes reference to interest on the deficiency. The government objects to the commission's report and moves to set aside the award of the commission and to revoke the reference to the commission, and to submit the case to a jury.

■■ The land owner complains that the amendment to the report deleting the interest allowance "is contrary to law and contrary to the evidence adduced upon the trial of the case." The commission was constituted and ordered to determine the issue of just compensation, not whether the government's estimated compensation was adequate. It was not directed to compute any interest which might be due the owner. The amount paid into the registry of the court, necessary to a determination of "the deficiency," is immaterial to the issue submitted to the commission. United States v. 985 Acres of Land, etc., 183 F.Supp. 402 (E.D. Va. 1959), aff'd 4 Cir., 279 F.2d 890. Since the owner cites no authorities in support of his objection and the point is not mentioned in his briefs, it is assumed that his objection is abandoned and it will be overruled. Interest will be computed and included in the final judgment pursuant to 40 U.S.C.A. § 258(a).

The government complains of various rulings of the commission on the admissibility of evidence. An examination of the transcript of the proceedings before the commission has led me to believe that there was sufficient evidence, properly admitted, to support the findings of the commission.

■ At best, the arrival at just compensation for property taken for government use is not an easy task. The measure of just compensation is the fair market value of the whole property at the time of the taking. No formula for measuring this value can be laid down. All elements entering into the value must be considered, including, in the case of agricultural land, its productivity, accessibility, and all other factors which would be of interest to a prospective buyer.

Two of the commissioners are experienced and capable lawyers. The third member, a realtor, is a former state tax commissioner, who, in that office, exercised quasi-judicial functions. Error in the admission of evidence, if error there was, is not likely to have been prejudicial when considered by such a commission. The commission was required to weigh the evidence, and I will assume that in so doing it gave consideration only to the competent evidence.

The government's chief challenge is its contention that the commission refused to receive evidence of sales of comparable lands proffered through the testimony of the government's experts on direct examination. The commission, in refusing to receive the evidence, relied apparently upon the rule prevailing in the state courts of Kansas that evidence of other sales is irrelevant except on cross-examination.

Kansas follows the so-called Pennsylvania rule. K. C. & T. Ry. Co. v. Vickroy, 46 Kan. 248, 26 P. 698. This rule is based in part at least on the belief that knowledge of other sales is apt to be based on hearsay and that confusing collateral issues would be introduced. 1 Jones on Evidence, 5th Ed., 341.

■ Rule 43(a), Federal Rules of Civil Procedure, generally places the admissibility of evidence solely upon the basis of relevancy and materiality. By its provi-

sions, evidence is to be admitted which is admissible (1) under federal statutes, or (2) under the rules heretofore applied by federal courts in equity suits, or (3) under the rules applied in the courts of the state. The rule is a rule of admissibility, not a rule of exclusion. 2B Barron & Holtzoff Fed.Prac. 207. The fact that the state courts would exclude the testimony does not necessarily require its exclusion by a United States Court within that state. Phelan v. Middle States Oil Corporation, 220 F.2d 593 (2d Cir., 1955), cert. denied 349 U.S. 929, 75 S.Ct. 772, 98 L.Ed. 1260. Nor is the Erie doctrine applicable. Monarch Insurance Company of Ohio v. Spach, 281 F.2d 401 (5th Cir., 1960).

■ Applying Professor Moore's three-point test (5 Moore's Fed.Prac. 1321), we see that no statute of the United States requires admission of the proffered evidence. It is not contended that it is admissible under any federal equity rule. Since state exclusionary rules are not controlling, and since the Vickroy rule is exclusionary, it would seem that testimony of comparable sales should be received *if relevant*.

Proof of sales of *truly* comparable land has considerable probative value in the determination of the ultimate issue of just compensation. Certainly, such evidence is superior to the mere speculative opinion of an "expert." No two tracts of land are identical, and evidence of other sales would not be relevant unless and until substantial similarity of the tracts is established. This of necessity introduces collateral issues.

I am of the opinion that the Kansas rule, being an exclusionary rule, need not be followed by this court or by its commissions; that the question of substantial similarity of lands and of market conditions, and whether determination of those questions would require undue consumption of time or involve confusion of issues, must be left to the discretion of the commissioners; and that in the absence of abuse of discretion, the resolution of those questions by the commissioners should remain undisturbed.

■ Not all sales of lands said to be comparable are made admissible by the bare assertion that the tracts are comparable. Before receiving evidence of this sort, the commission must be satisfied that substantial similarity in fact exists and that the proffered witness is qualified to testify on the point.

"The courts are agreed that proof should be confined to sales of land in the vicinity, regard being had to the nature of the land as sparsely settled or agricultural lands or land located in urban or thickly settled communities, and consideration being given also to the question as to whether or not the land is so situated that rapid changes have taken place in the value. It is essential, too, that the witness should have personal knowledge of the other sales; mere hearsay or recitals in deeds as to consideration are not competent to prove the facts. Furthermore, the other sales must have been, not forced, but free and voluntary. And it is not permissible to prove the amount received by way of compromise or settlement on condemnation proceedings." 1 Jones on Evidence, 5th Ed., 343.

"The price paid for similar land, when admitted as independent evidence of value, must be proved with as much formality as any other material fact, and witnesses are not permitted to testify in regard to sales unless they were parties thereto, or were the brokers who effected the sale, or in some other manner knew the price paid of their own knowledge, and not as a matter of common rumor, or from hearsay only. Similarly, deeds of neighboring lands, containing recitals of the consideration, are not admissible as a means of proving the price paid." 5 Nichols on Eminent Domain, 3d Ed., 278.

■ The record does not reveal that the evidence proffered by the government met the tests prescribed by Nichols and Jones. I hold that the commission did not, in this case, abuse its discretion in

refusing to receive the evidence of comparable sales proffered by the government.

The report of the commission will be approved and affirmed. Counsel will submit an appropriate order.