**UNITED STATES of America**

v.

**84.4 ACRES OF LAND, MORE OR LESS, Situate IN WARREN COUNTY, STATE OF PENNSYLVANIA, and Lester M. Sheldon et ux. et al.**

Civ. A. No. 61–545.

United States District Court
W. D. Pennsylvania.

Dec. 20, 1963.

Bloom, Bloom, Rosenberg & Bloom, Washington, Pa., for landowners.

Robert Tucker, Asst. U. S. Atty., Pittsburgh, Pa., for the United States.

MARSH, District Judge.

This is a condemnation proceeding in which, by Complaint and Declaration of Taking filed September 19, 1961, the United States of America acquired 84.4 acres of land designated as Tract 1027 and consisting of the Kinzua Valley Golf Course and related acreage in Warren County, Pennsylvania. A jury trial was held to determine just compensation, and the jury returned a verdict of $97,000 in favor of the landowners.

The landowners have moved for a new trial, alleging error by the court in (a) striking from the reproduction cost estimate of their golf course expert witness, William F. Gordon, a sum of $84,800 allocated to clearing a hypothetical wooded tract of trees, stumps, stones, roots and brush preliminary to reproduction of the golf course on such a site; (b) refusing to grant the landowners' "motion for declaratory judgment" relative to the *admissibility* of the $84,800 clearance figure as a proper element in the computation of reproduction cost; (c) charging the jury to disregard a so-called reproduction cost estimate of $83,317 given by Edmund Ault, the Government's golf course expert witness; (d) permitting testimony on alleged comparable sales of three golf courses deemed by the landowners to be non-comparable as a matter of law; and (e) failing to adequately instruct the jury in the three principal dollars and cents guides (income, reproduction cost and comparable sales) generally employed by real estate experts in formulating fair market value estimates. For reasons hereinafter set forth, the "Motion for New Trial" will be denied.

On September 19, 1961, the golf course proper, a public course situated in the foothills of the Allegheny Mountains, consisted of approximately 65 cleared acres, on which were constructed nine holes and a practice green, a frame club house with integral snack counter, a frame pro shop, a tool shed, and a parking area. The highest and best use of Tract 1027 at that time, it is agreed, was as a golf course.

### I. *Reproduction Cost*

(a) Exclusion of $84,800.

Golf course expert, William F. Gordon, testified for the landowners that the golf course proper, as it stood on the date of taking, could be reproduced at a total cost of $165,396. Upon cross-examination, he admitted that $84,800 of that sum—more than 50%—was allocated to

clearing a hypothetical wooded tract of trees, stumps, roots, brush, and large stones preliminary to actual reproduction of the golf course upon such a site. The rationale of this financial largesse was that the golf course should be reproduced in a rustic and scenic setting identical to that in which it lay, surrounded by mountains and wooded neighboring properties. This, the landowners insisted, could only be achieved by carving an identical golf course out of a *wooded tract* in similar surroundings, at a similar elevation and with a similar view, so as to make the land site for the reproduced golf course physically identical to the land site taken. We ordered this $84,800 clearance allocation to be stricken. The jury was instructed not to consider Mr. Gordon's estimate "in the sum of one hundred and sixty-five thousand dollars as the cost of reproducing this golf course on timber land in the vicinity", but was told that it could "consider his estimate of about eighty thousand six hundred dollars for reproducing the Kinzua Golf Course as it existed on the land prior to the taking." (T., p. 556.)

At the trial we accepted the reproduction cost method of ascertaining fair market value urged upon us by the owners. An explanation of this method as contained in the Real Estate Encyclopedia, ch. 33, p. 868, was read to the jury by one of the owners' real estate experts, Richard A. Wolfe (T., pp. 328–329).[1] Their counsel quoted this explanation in part on page 9 of their brief and argue that the reproduction method was the only fair method to be applied to the present case (brief, p. 10). On page 13 of their brief they state:

"The value for the land was a separate factor *to be added on* to the reproduction costs as the court finally realized and so charged the jury at page 571 when it stated:

" 'Ladies and gentlemen: In the use of the reproduction cost method, you should consider not only replacement costs of the golf course as such, but also the value of the land as substantially cleared of 65 acres, and the remainder in timber, and the depreciated value of the buildings erected on the land.' " (Emphasis supplied.)

This instruction, requested by the owners at the conclusion of the charge, was more favorable to them than they were entitled to under the evidence. Although the owners were permitted to use the reproduction method thus advanced, they offered no proof of the estimated cost of the buildings, less depreciation, and the value of the "special purpose" land which under that method is to be added. Apparently they feared, as their counsel stated, "that would have violated the unit rule" (T., pp. 567–568).[2] Absent reproduction cost of the buildings, less depreciation, plus the value of the land, the requested instruction was confusing and unnecessary.

---

1. "Nature of Cost Approach. The Cost Approach is based on an objective concept of value, that is, the value of the property lies in the object itself, and its cost is the dominant factor in an estimate of value. In applying the Cost Approach, the value of property is estimated as follows:

"1. The appraiser estimates the *reproduction* or *replacement cost new* of the property.

"2. He then estimates *accrued depreciation*, and deducts the amount of this depreciation from the cost new, in order to arrive at the depreciated value of the improvements.

"3. The *value of the land* is then estimated and added to the depreciated value of the improvements, to reach an estimate of value by the Cost Approach.

"Stated graphically: Reproduction or Replacement Cost New – Depreciation + Land Value = Value by the Cost Approach."

(Quoted from original text from which the witness read to the jury.)

Cf. United States v. Becktold Co., 129 F. 2d 473, 477–478 (8th Cir. 1942).

2. Kinter v. United States, 156 F.2d 5, 172 A.L.R. 232 (3d Cir. 1946); United States v. Certain Parcels of Land, etc., 149 F.2d 81 (5th Cir. 1945); United States v. Wise, 131 F.2d 851 (4th Cir. 1942).

Actually, the reproduction cost of the golf course alone, without the value of the buildings and land, came into the case only as an item of evidence to be considered by the jury along with all the other evidence in determining the fair market value of the condemned land.[3] The jury was so charged (T., pp. 551–560).

■ In arriving at just compensation or the market value, the golf course, the buildings, and the land should be evaluated as a whole as of September 19, 1961, the date of taking. It is too well settled for argument that the inquiry as to market value of property taken by condemnation is directed to the condition in which that property existed on the date of taking. United States v. Miller, 317 U.S. 369, 374, 63 S.Ct. 276, 87 L.Ed. 336; Danforth v. United States, 308 U.S. 271, 283, 60 S.Ct. 231, 84 L.Ed. 240; Olson v. United States, 292 U.S. 246, 255, 54 S.Ct. 704, 78 L.Ed. 1236; United States v. Chandler-Dunbar Co., 229 U.S. 53, 76, 33 S.Ct. 667, 57 L.Ed. 1063.

■ It is our opinion in this unique case that if the cost of reproduction of this golf course is admissible at all, such reproduction must be upon land in the same cleared condition as it existed on September 19, 1961. For years preceding that date this land had existed as a golf course free of undesirable growth and stones.

The cost of carving a golf course out of a wooded tract in an identical setting, with a similar view, surrounded by mountains and wooded property, in our opinion, is the type of evidence which was held to be inadmissible in Anderson-Tully Co. v. United States, 189 F.2d 192, 195 (5th Cir. 1951); 5 Nichols, Eminent Domain, § 20.2 [1], p. 386.[4]

■ Just compensation does not mean indemnity or the redemption of property owners from what may have been a bad bargain. It is market value which may be more or less than the owners' investment or value of the property to them. Olson v. United States, supra 292 U.S. p. 255, 54 S.Ct. p. 708, 78 L.Ed. 1236; United States v. Petty Motor Co., 327 U.S. 372, 377, 66 S.Ct. 596, 90 L.Ed. 729; Kinter v. United States, 156 F.2d 5, 7, 172 A.L.R. 232 (3d Cir. 1946). The cost of reproducing the golf course was only admissible for what use it could serve in reflecting the market value of the property as a whole. United States v. 7.2 Acres of Land, Etc., 117 F.Supp. 499, 502 (E.D.Tenn.1953).

If the owners' argument is accepted, then in future condemnation proceedings, owners of such structures or improvements as arboricultural nurseries, parks, cemeteries, tennis courts, croquet courses, bowling greens, and special purpose farms, located in forested areas, could introduce reproduction costs in evidence and include therein the cost—however prohibitive—of clearing the land of woods, stumps, roots and stones. We are loath to endorse this view as the law.

■ As stated in United States v. Benning Housing Corporation, 276 F.2d 248, 250 (5th Cir. 1960) and reiterated in part in 5 Nichols, Eminent Domain, § 20.2 [1], p. 376:

"An examination of the cases dealing with the admissibility of reproduction cost evidence reveals that, although the subject is clouded with considerable uncertainty, some pattern does emerge. Thus, it has almost uniformly been held that, absent some special showing, reproduction cost evidence is not admissible in a condemnation proceeding. This rule stems from a recognition of the fact that reproduction cost evidence almost invariably tends to inflate valuation. This is so because the reproduction cost of a structure sets an absolute ceiling on

---

3. See Hickey v. United States, 208 F.2d 269, 279 (3d Cir. 1953), and United States v. 206.82 Acres of Land, etc., 205 F.Supp. 91 (M.D.Pa.1962).

4. Of course, the owners were entitled to have the jury consider the scenic attraction of the course in determining its market value, and it was so instructed (T., pp. 553–554, 557, 559–560).

the market price of that structure, a ceiling which may not be, and most frequently is not, even approached in actual market negotiations. When this inherently inflationary attribute of reproduction cost evidence is considered in the light of the misleading exactitude which such evidence almost inevitably imparts to a jury unsophisticated in the niceties of economics, the justification for placing substantial safeguards upon its admission is apparent."

The necessity for such substantial safeguards is dramatized by the case at bar, where it is sought to justify inclusion of a disproportionately costly item in an estimate for the reproduction cost of a structure or improvement adaptable to the land upon which it was constructed, but which could hardly be adapted to a heavily wooded tract without incurring great expenditures for clearance of same. The strikingly inflationary tendency of this $84,800 item is, accordingly, a potent factor compelling its exclusion from evidence.

### (b) Motion for Declaratory Judgment.

We are unaware of any legal basis in the landowners' contention that they were entitled to a declaratory judgment, requested on the day when the case was called for trial, concerning admissibility into evidence of the $84,800 land clearance costs advanced by the witness Gordon. In fact, such law as exists is plainly to the contrary. See: 26 C.J.S. Declaratory Judgments § 40, and particularly footnotes 82 and 83 at page 122.

We are similarly ignorant of a valid ground for their related contention that rejection of such evidence upon proper motion to strike constituted prejudicial surprise and error. This argument is without merit.

### (c) Propriety of Jury Charge re $83,317 Estimate.

We do not think there is merit in the owners' contention that the court erred in charging the jury to disregard a so-called reproduction cost estimate of $83,317 given by golf course expert, Edmund Ault, a Government witness. Mr. Ault testified that to reproduce the Kinzua Valley Golf Course in its condition as of September 19, 1961, would cost $57,400, while to "reproduce" it as changed in design to meet minimum current United States Golf Association standards would cost $83,317. The court's charge instructed the jury to disregard the latter figure *as reproduction costs*, but permitted the jury to consider it for whatever questionable utility it may have had in reflecting market value. Clearly, the $83,317 was not reproduction cost evidence in its proper sense, i. e., the cost of reproducing a structure or improvement according to its own particular design. Accordingly, no error was committed in so instructing the jury.

### II. Comparable Sales

Victor H. Samuelson, a real estate expert, testified for the Government concerning details, including price, of the sales of three other golf courses, which sales he deemed comparable to a hypothetical arm's-length sale of the Kinzua golf course on September 19, 1961. He relied upon their sales prices in formulating an opinion that the fair market value of Tract 1027 on September 19, 1961 was $87,000.

Sale No. 1, that of the corporate stock of Conewango Forks Golf Club, Inc., located 31 road miles from Tract 1027, near East Randolph, New York, occurred on November 15, 1958, for a consideration of $55,000. The assets of the Club consisted of (1) 56.25 acres in fee simple; (2) a public nine hole golf course; (3) a frame club house; (4) a frame storage building; and (5) a liquor license complete with liquor and restaurant inventory.

Sale No. 2, that of the Cassadaga Country Club, located 51 miles from Tract 1027, near Cassadaga, New York, occurred on September 30, 1960, for a consideration of $48,000. The assets conveyed consisted of (1) 90 acres in

fee simple; (2) a public nine hole golf course; (3) a frame club house; (4) a frame pro shop and attached frame garage; and (5) a liquor license, restaurant, bar and inventory.

Sale No. 3, that of the Maplehurst Country Club, located 33 road miles from Tract 1027, near Lakewood, New York, was made on August 25, 1960, for a consideration of $125,000. The assets conveyed consisted of (1) 119 acres in fee simple; (2) two public nine hole golf courses; (3) a frame club house; (4) a frame pro shop; (5) a parking lot; and (6) a liquor license and restaurant.

Before being permitted to relate the sales prices of those golf courses, Samuelson gave their dates of sale and described in detail the features, yardages, and scenic appeal of each, compared them vis-a-vis the Kinzua course, and indicated the road mileage of each from Tract 1027. He further testified that he had visited all three "comparables", discussed their attributes and sales with principals involved in the sales transactions, and verified such transactions by the public records. Before Samuelson testified as to the sales prices, the landowners' attorneys were permitted to cross-examine him upon his familiarity with the golf courses and their sales, and subsequent to completion of his testimony, presented witnesses to rebut comparability.

We are bound in questions of valuation by standards of federal law. Cf. United States v. Certain Parcels of Land In City of Philadelphia, etc., 144 F.2d 626, 155 A.L.R. 253 (3d Cir. 1944). Those standards clearly provide that a real estate expert may testify in a condemnation proceeding as to sales prices of similar properties when he has taken such sales into consideration in arriving at an opinion of fair market value. Har-

well v. United States, 316 F.2d 791 (10th Cir. 1963); United States v. 18.46 Acres of Land, etc., 312 F.2d 287 (2d Cir. 1963); United States v. Johnson, 285 F.2d 35 (9th Cir. 1960); District of Columbia Redev. L. A. v. 61 Parcels of Land, 98 U.S.App.D.C. 367, 235 F.2d 864 (1956); United States v. 5139.5 Acres of Land, etc., 200 F.2d 659 (4th Cir. 1952). It must first be demonstrated to the satisfaction of the court that the properties sold were sufficiently similar and proximate in location and time of sale to the property in litigation as to be of utility in reflecting the market value of the latter. 5 Nichols, Eminent Domain, § 21.31. "Similarity does not mean identical, but having a resemblance". Id., p. 440.

In our opinion the alleged comparable golf course sales were sufficiently similar and proximate in time to be useful in reflecting the fair market value of the condemned golf course. Further, we believe that insofar as proximity of location is concerned, a court should exercise its discretion in accordance with exigencies of a case, and if land is not of a character commonly bought and sold, should allow evidence of the sales of similar land located at some distance from the land taken. As was stated in Knollman v. United States, 214 F.2d 106, at p. 109 (6th Cir. 1954), "the proper test of admissibility in such cases is not the political dividing line, be it township or county." [5] We do not believe that it was an abuse of discretion to permit testimony as to sales of golf courses located in an adjoining New York county, leaving the weight of such testimony for the jury.[6]

### III. Adequacy of Jury Instructions

Finally, the landowners claim prejudicial error in that the court did not instruct the jury in detail concerning the three principal dollars and cents

---

5. Cf. United States v. Benning Housing Corporation, supra, where comparable sales were of land in three different states.

6. It is noteworthy that the jury verdict of $97,000 matched the opinion of fair market value rendered by Leonard Kane, an eminent and impressive real estate expert witness for the Government. Kane did not testify to taking the alleged comparable sales into consideration in forming his opinion.

guides employed generally by real estate experts in formulating their opinions as to fair market value, namely, the income approach, reproduction cost approach, and comparable sales approach.

There was no need to mention the income approach in charging the jury. Not one of the experts testified to relying upon the income history of the Kinzua Valley Golf Course in arriving at an opinion of fair market value. The income approach simply was not at issue in this case.

We are not apprised by the owners of wherein the charge concerning reproduction costs was not sufficient. We have heretofore discussed compliance with the only additional instruction or correction requested by them. The portion of the charge devoted to reproduction cost estimates in our judgment was adequate, and we think the claim of prejudicial error is groundless.

It is also alleged that the court in its charge should have explained certain factors for the jury to take into consideration in determining the weight to be given to alleged comparable sales. It appears that the factors listed in the owners' brief are actually those intended for consideration of the court in determining admissibility of such evidence in the first instance.[7] The owners had ample opportunity to attack the alleged comparability of the Conewango Forks, Cassadaga, and Maplehurst golf courses on cross-examination, by way of rebuttal, and in closing argument. They also had the opportunity to submit points for charge. They cannot now be heard to condemn the court for failing to aid in the discharge of their evidentiary burden.

It appears that other grounds for a new trial were claimed by the owners in their motion, but since such alleged grounds were not developed either in their brief or upon oral argument, we assume that they are not being pressed.

An appropriate order will be entered.

7. Indeed, the authorities cited by the owners in support of their proposition, United States v. 32.99 Acres of Land In Coffey County, Kan., 211 F.Supp. 61 (D. Kan.1962) and United States v. 585.87 Acres of Land, etc., 210 F.Supp. 585 (D. Kan.1962), involved only the question of admissibility of such evidence, and perhaps do not correctly reflect the law even in that respect. See: United States v. 18.46 Acres of Land, etc., 312 F.2d 287 (2d Cir. 1963), and United States v. 5139.5 Acres of Land, etc., 200 F.2d 659 (4th Cir. 1952).